ACCEPTED
03-15-00436-CV
6512011
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/14/2015 5:04:13 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00436-CV

_____

### IN THE COURT OF APPEALS

### THIRD JUDICIAL DISTRICT COURT

### AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/14/2015 5:04:13 PM
JEFFREY D. KYLE
Clerk

_____

CHARLES O. "CHUCK" GRIGSON,
APPELLANT

VS.

THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE,
THE TEXAS COMMISSIONER OF INSURANCE;
and FARMERS GROUP, INC. ET AL.,
APPELLEES

_____

On Appeal from the 261st Judicial District Court of Travis County, Texas
Cause No. D-1-GV-02-002501

_____

**APPELLANT GRIGSON'S MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO APPELLEES' REPLY AND JOINT MOTIONS TO DISMISS APPELLANTS' APPEALS FOR LACK OF APPELLATE JURISDICTION**

_____

Joe K. Longley
LAW OFFICES OF JOE K.
LONGLEY
State Bar No. 12542000
1609 Shoal Creek Blvd. #100
Austin, Texas 78701
512-477-4444

Philip K. Maxwell
LAW OFFICE OF PHILIP K.
MAXWELL
State Bar No. 13254000
1609 Shoal Creek Blvd #100
Austin, Texas 78701
512-947-5434

*Attorneys for Appellant Grigson*

**TO THE HONORABLE COURT OF APPEALS:**

Appellant Grigson files this Motion for Leave to File a Sur-Reply in Opposition to Appellees' Reply and Joint Motions to Dismiss Appellants' Appeals for Lack of Appellate Jurisdiction to show the Court the following:

Appellees' Reply necessitates a Sur-Reply by Grigson to address the Appellees' errors and omissions in their Reply relating to both the Order made the subject of this appeal, and the record regarding the law applicable to his case.

### CONCLUSION AND PRAYER

For these reasons, Grigson respectfully requests that the Court grant him leave to file the accompanying Sur-Reply, consider the attached Sur-Reply, and further grant all other relief to which Grigson may show himself justly entitled.

Date: August 14, 2015

Respectfully submitted,

CHARLES O. "CHUCK" GRIGSON
APPELLANT

LAW OFFICES OF JOE K. LONGLEY

_____/s/ Joe K. Longley_____
Joe K. Longley
State Bar No. 12542000
1609 Shoal Creek Blvd. #100
Austin, Texas 78701
512-477-4444 PHONE
512-477-4470 FAX

LAW OFFICE OF PHILIP K. MAXWELL


_____/s/ Philip K. Maxwell_____
Philip K. Maxwell
State Bar No. 13254000
1609 Shoal Creek Blvd #100
Austin, Texas 78701
512-947-5434 PHONE

ATTORNEYS FOR APPELLANT,
CHARLES O. "CHUCK" GRIGSON

## CERTIFICATE OF SERVICE


The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served on the following counsel of record by eFile.TXCourts.gov electronic filing system on August 14, 2015.


Joshua Godbey
Office of the Attorney General of Texas
P. O. Box 12548
Austin, TX 78711-2548

Sara Waitt
General Counsel
Texas Department of Insurance
P. O. Box 149104
Austin, TX 78714-9104

M. Scott Incerto
Norton Rose Fulbright
98 San Jacinto Blvd #1100
Austin, TX 78701

Marcy Greer
Alexander Dubose Jefferson & Townsend, LLP
515 Congress Ave., Suite 2350
Austin, TX 78701

Michael J. Woods
8620 N. New Braunfels, Ste. 522
San Antonio, TX 78217

Joseph C. Blanks
PO Box 999
Doucette, TX 75942


_____/s/ Joe K. Longley_____
Joe K. Longley

## CERTIFICATE OF CONFERENCE

Grigson's counsel has conferenced with Scott Incerto, Lead Counsel for the Farmers Parties; and Ryan Mindell, Counsel for the State of Texas, about the merits of the foregoing motion, pursuant to Texas Rule of Appellate Procedure 10.1(a)(5), and counsel for Farmers Parties does not oppose the Motion, while counsel for the State does.

_____/s/ Joe K. Longley_____
Joe K. Longley

## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4(i)

I certify that the foregoing document contains 115 words and complies with the word limit set forth in Texas Rule of Appellate Procedure 9.4(i).

_____/s/ Joe K. Longley_____
Joe K. Longley

NO. 03-15-00436-CV

_____

# IN THE COURT OF APPEALS
# THIRD JUDICIAL DISTRICT COURT
# AUSTIN, TEXAS

_____

CHARLES O. "CHUCK" GRIGSON,
                                        APPELLANT
VS.

THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE,
THE TEXAS COMMISSIONER OF INSURANCE;
and FARMERS GROUP, INC. ET AL.,
                                        APPELLEES

_____

On Appeal from the 261st Judicial District Court of Travis County, Texas
Cause No. D-1-GV-02-002501

_____

**APPELLANT GRIGSON'S SUR-REPLY IN OPPOSITION TO
APPELLEES' REPLY AND JOINT MOTIONS TO DISMISS APPELLANTS' APPEALS
FOR LACK OF APPELLATE JURISDICTION**

_____

Joe K. Longley
LAW OFFICES OF JOE K.
LONGLEY
State Bar No. 12542000
1609 Shoal Creek Blvd. #100
Austin, Texas 78701
512-477-4444

Philip K. Maxwell
LAW OFFICE OF PHILIP K.
MAXWELL
State Bar No. 13254000
1609 Shoal Creek Blvd #100
Austin, Texas 78701
512-947-5434

*Attorneys for Appellant Grigson*

**TO THE HONORABLE COURT OF APPEALS:**

Appellant Grigson files this Sur-Reply in Opposition to Apellees' Reply and Joint Motions to Dismiss Appellants' Appeals for Lack of Appellate Jurisdiction and in further support of his Emergency Motion to Stay the Sending of Class Notice, filed on July 16, 2015.

**Argument**

The State and Farmers refuse to acknowledge what is in plain sight. The 2003 certification order is expressly conditioned on approval of one, specific settlement agreement—the 2003 settlement.[1] Nothing in that order says or suggests that the certification applies to anything else, let alone a new settlement agreement proposed for approval 12 years in the future, a settlement containing different terms and negotiated under different and troubling circumstances not addressed in 2003. In fact, the 2003 Settlement Agreement expressly prohibits the 2003 *agreed* certification to be used for *any* other purpose.[2]

---

[1] *See* **EXHIBIT 1** (2003 Order).

[2] The 2003 certification applied exclusively to the 2003 Settlement Agreement. In the 2003 Settlement Agreement, the State and Farmers agreed that "The Parties will seek, and the Farmers Parties *agree to, conditional certification of the Settlement Classes pursuant to* **this** *Settlement Agreement*. The Farmers Parties **do not agree to certification** of the Settlement Classes *for any purpose* **other than to effectuate** this *Settlement Agreement***."** **EXHIBIT 2.** (Emphasis added). Thus Farmers and the State *agreed*—in 2003—that the 2003 conditional certification could not be used for *any* purpose other than to effectuate the 2003 settlement. The same language appeared in the 2013 settlement, and drew the attention of the trial court at the September 4, 2014 hearing on Farmers' Motion to Strike Grigson's Intervention. In an exchange with the trial court, Scott Incerto, confirmed that this language means the certification applies only to effectuating the settlement then before the court and nothing else. *Cont'd on next page*.

There is likewise nothing in the law of class actions—and certainly nothing in the 16 cases that the State and Farmers make us read—that says or suggests that a 2003 settlement-only, conditional certification can be severed from the 2003 settlement agreement that is its sole reason for existence, a settlement that the parties themselves terminated years later by entering a new and different 2013 settlement agreement that expressly supersedes and replaces all agreements before it, and that this severed 2003 certification can then be stitched onto yet another new and different 2015 settlement agreement that expressly supersedes and replaces all others before it. The 2003 certification is neither Dracula nor Frankenstein. It cannot be brought back to life to serve the interests of the State and Farmers in attempting to destroy this Court's statutory jurisdiction.

---

> THE COURT: Well, does that mean if I decline to approve a settlement, this settlement, and you're now going to litigate it--* * * In other words, you are agreeing to a class action trial or not?
>
> MR. INCERTO: No, your honor, *we agreed* **for purposes of <u>this</u> settlement agreement—**
>
> THE COURT: Exactly.

**EXHIBIT 3** at 56. (Emphasis added).

The plain meaning of the contractual language, confirmed by Farmers' lawyer, is that an agreed certification can only be used to effectuate the settlement then before the court. There is accordingly no contractual room for the State and Farmers to argue today that a 2003 conditional certification can be used to effectuate a 2015 settlement.

That to abrogate this Court's jurisdiction is the goal of the State and Farmers is obvious. And yet not one word of their reply do the State and Farmers devote to convincing the Court that an alternate, less malignant purpose lays behind their last minute switch of orders, from the order attached to and required by the 2015 settlement (with the Rule 42 and Insurance Code findings and the words "hereby certifies") to the order now before the Court (with the Rule 42 and Insurance Code findings and "hereby certifies" redacted) and its missing paragraphs 3 and 4.[3] The State and Farmers could hardly have been worried that the trial court, if they dared present it with the "hereby certifies" order, would not have signed it. The trial court repeatedly remonstrated Grigson's counsel during his objections to the switched order that "I'm going to sign the order they presented;" "I'm not going to entertain any substantive differences" [in their order]; and "It's going to be the

---

[3] The numbering sequence jumps from para. 2 directly to para. 5. Exhibit A to the 2013 Settlement (attached here as **EXHIBIT 4**) remained the State and Farmers' proposed order to preliminarily approve the 2015 settlement throughout the entire preliminary approval process, including the close of evidence at the July 2, 2015 preliminary approval hearing. That was the moment the ditch and switch occurred. When the trial court asked the parties if they had a proposed order, Farmers' lawyer Marcy Greer handed to the court and, for the first time, to Grigson's counsel, the redacted order. Ms. Greer admitted that she had not previously provided the new proposed order to the "opposing parties." Ms. Greer also admitted that "being completely detail oriented" she had found some typographical errors and even some mistakes she wanted to correct and the State's lawyers they wanted to correct some website addresses, which the trial court let them do. *See* **EXHIBIT 5** Tr. 7/2/2015 at 116-122. The reason for the ditch and switch was clear to the trial court: "I know what they're doing." Apparently neither the trial court nor the State and Farmers were "detailed oriented" enough to note that the order was missing its paragraphs 3 and 4.

order they've proposed."[4]   The trial court's "been there, done that" view of his duty as guardian of the class showed quite clearly that whatever "their order" said or didn't say, the trial court was going to sign it.

So why in the world go to all the time and trouble to fabricate and defend a "conditional settlement certifications live forever" view so inconsonant with the caution the courts have been instructed to follow when approving settlement only class actions, especially those agreed to at the instance of the defendant?[5]   To abrogate this Court's jurisdiction, that much we know.  But is that all?  What can we expect at the final hearing, when the trial court is supposed to sign *another* order attached to and required by the 2015 settlement—the "FINAL JUDGMENT"?[6]  Like the preliminary approval order ditched and switched by the State and Farmers, the Final Judgment contains all the certification findings required by Rule 42 and the Insurance Code.  If the preliminary approval order required by the settlement can be ditched and switched, what's to prevent the final judgment from suffering the same fate?

---

[4]   **EXHIBIT 5,** Tr. 07/2/2015 (Trial Court's Ruling Section Tr. 116-135) at 123:11-12, 133:24-25, 134:17-18.

[5]   It is undisputed that the State agreed to convert its enforcement action to a settlement-only class action was done totally at the insistence of Famers as a condition of settlement.  *See Lubin v. Farmers Group, Inc., et al* 2009 WL 3682602 at *4 (Tex.App.—Austin).

[6]   **EXHIBIT 6**.

And that would be a powerful argument indeed. For if a 12-year-old superseded conditional certification can be used when preliminarily approving a different settlement at the preliminary approval stage, why can't it be used when finally approving that same settlement at the final approval stage? While such a result would require a stunning rebuke of the Supreme Court's warnings about certifying settlement-only class actions, and the heightened diligence required of the trial courts to police them for collusion and conflicts, the result follows ineluctably from the argument the State and Farmers are now making to this Court. What is at stake here, then, is not simply a "jurisdictional" question relating to this particular case. At stake here is the duty of trial courts as "guardians of the class" in all settlement-only class action cases. The State and Farmers "jurisdictional" argument—motivated by perverse purpose and reeking with perverse consequences—must be rejected.

## CONCLUSION

Appellant Grigson respectfully asks this Court to deny the State and Farmers' Joint Motion to Dismiss for Lack of Appellate Jurisdiction; and to stay class notice to preserve the Court's jurisdiction to decide the important issues in this case.

Date:  August 14, 2015                    Respectfully submitted,

                                          CHARLES O. "CHUCK" GRIGSON
                                          APPELLANT

                                          LAW OFFICES OF JOE K. LONGLEY
                                          _____/s/ Joe K. Longley_____
                                          Joe K. Longley
                                          State Bar No. 12542000
                                          1609 Shoal Creek Blvd. #100
                                          Austin, Texas 78701
                                          512-477-4444 PHONE
                                          512-477-4470 FAX

                                          LAW OFFICE OF PHILIP K. MAXWELL
                                          Philip K. Maxwell
                                          State Bar No. 13254000
                                          1609 Shoal Creek Blvd #100
                                          Austin, Texas 78701
                                          512-947-5434 PHONE

                                          ATTORNEYS FOR APPELLANT,
                                          CHARLES O. "CHUCK" GRIGSON

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served on the following counsel of record by eFile.TXCourts.gov electronic filing system on August 14, 2015.

Joshua Godbey
Office of the Attorney General of Texas
P. O. Box 12548
Austin, TX  78711-2548

Sara Waitt
General Counsel
Texas Department of Insurance
P. O. Box 149104
Austin, TX 78714-9104

M. Scott Incerto
Norton Rose Fulbright
98 San Jacinto Blvd #1100
Austin, TX 78701

Marcy Greer
Alexander Dubose Jefferson & Townsend, LLP
515 Congress Ave., Suite 2350
Austin, TX 78701

Michael J. Woods
8620 N. New Braunfels, Ste. 522
San Antonio, TX 78217

Joseph C. Blanks
PO Box 999
Doucette, TX 75942

_____/s/ Joe K. Longley_____
Joe K. Longley

## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4(i)

I certify that the foregoing document contains 821 words and complies with the word limit set forth in Texas Rule of Appellate Procedure 9.4(i).

_____/s/ Joe K. Longley_____
Joe K. Longley

# VERIFICATION

THE STATE OF TEXAS       §

COUNTY OF TRAVIS       §

BEFORE ME, the undersigned authority, on this day personally appeared Joe K. Longley, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said the following:

"My name is Joe K. Longley, and I am capable of making this verification, and the facts in this verification are true and within my personal knowledge. I am lead counsel for Appellant Charles O "Chuck" Grigson. All documents included in the APPENDIX filed for this Sur-Reply are true and correct copies of documents filed or presented to the trial court in this action. I have read the Sur-Reply and the factual statements contained therein that are not otherwise established by this record are within my personal knowledge and are true and correct."

"Further, Affiant sayeth not."

_____
Joe K. Longley

SUBSCRIBED AND SWORN TO before me on this the 14th day of August, 2015.

_____
Notary Public, State of Texas
My Commission Expires: July 8, 2018

MARYANN PARRIS
Notary Public, State of Texas
My Commission Expires
July 08, 2018

VERIFICATION OF JOE K. LONGLEY

NO. 03-15-00436-CV

_____

IN THE COURT OF APPEALS
THIRD JUDICIAL DISTRICT COURT
AUSTIN, TEXAS

_____

CHARLES O. "CHUCK" GRIGSON,
APPELLANT
VS.

THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE,
THE TEXAS COMMISSIONER OF INSURANCE; and FARMERS GROUP,
INC. ET AL.,
APPELLEES

_____

On Appeal from the 261st Judicial District Court of Travis County, Texas
Cause No. D-1-GV-02-002501

_____

APPELLANT GRIGSON'S APPENDIX IN SUPPORT OF HIS SUR-REPLY IN
OPPOSITION TO APPELLEES' REPLY AND JOINT MOTIONS TO DISMISS
APPELLANTS' APPEALS FOR LACK OF APPELLATE JURISDICTION

_____

**EXHIBIT 1**      **6-27-2003 Order of Preliminary Approval**

**EXHIBIT 2**      **6-13-2003 Amended Settlement Agreement**

**EXHIBIT 3**      **9-4-2014 Hearing Transcript**

**EXHIBIT 4**      **Exhibit A to Second Amended Settlement Agreements -
Order of Preliminary Approval**

**EXHIBIT 5**      **7-2-2015 Hearing Transcript**

**EXHIBIT 6**      **6-13-2003 Exhibit K to Second Amended Settlement
Agreement – Final Judgment**

# EXHIBIT 1



CAUSE NO. GV202501

| | | |
|---|---|---|
| THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, and THE TEXAS COMMISSIONER OF INSURANCE, | § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | |
| FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIATION, FIRE UNDERWRITERS ASSOCIATION, FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, TEXAS FARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY OF TEXAS, MID-CENTURY INSURANCE COMPANY, FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, and TRUCK UNDERWRITERS ASSOCIATION, | § § § § § § § § § § § § § | OF TRAVIS COUNTY, TEXAS 261ST JUDICIAL DISTRICT |
| Defendants. | | |

## ORDER OF PRELIMINARY APPROVAL

This matter came on for hearing May 19-22, 2003, for preliminary approval of the Settlement Agreement and Stipulation of December 18, 2002, as amended on June 13, 2003, ("Settlement Agreement") between the State of Texas, the Texas Department of Insurance, and the Texas Commissioner of Insurance, on behalf of Texas policyholders of the Defendants in the classes defined below (collectively, the "State") and Fire Underwriters Association, Farmers Group, Inc. d/b/a Farmers Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Farmers Texas County Mutual Insurance Company,

30491649.1

Truck Insurance Exchange, and Truck Underwriters Association (collectively, the "Farmers Parties"). The State and the Farmers Parties have moved jointly, pursuant to Texas Rule of Civil Procedure Rule 42(e) and Texas Insurance Code article 21.21 § 18(g), for an Order of Preliminary Approval (the "Order") (1) preliminarily approving the settlement of all claims asserted in the above-captioned cause (the "Action"), the terms of which are set forth in the Settlement Agreement which has been filed with the Clerk of the Court, and (2) approving the proposed notice to the Classes.

The Court having read and considered the Settlement Agreement and attached exhibits, including the proposed Notice of Proposed Class Settlement, the proposed Claim Form, the proposed form of Final Judgment, exhibits, pleadings and record in this case, the evidence and other materials presented at the hearing, and argument of counsel and applicable authorities, finds that there exists substantial and sufficient grounds for entering this Order.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1. The Court, for purposes of this Order, adopts all defined terms as set forth in the Settlement Agreement.

2. Pursuant to Rule 42 and Texas Insurance Code article 21.21 §§ 17 & 18, this Court hereby certifies, only for purposes of effectuating the Settlement Agreement, the following Settlement Classes (the "Settlement Classes"):

    (i)     All of the Exchanges' Texas homeowners insurance policyholders (a) whose homeowners insurance policy incepted (including renewals) from December 28, 2001, through and including December 27, 2002, or (b) who received a notice at any time after November 14, 2001, that their HO-B policy would not be renewed (the "Rate Class");

    (ii)     All of the Exchanges' Texas homeowners insurance policyholders who according to Farmers' records were eligible to receive discounts for FPRA, age of home, or territory from November 16, 2000, through and including December 10, 2002 (the "Discount Class"); and

(iii)    All Texas homeowners or automobile insurance policyholders of the Exchanges or the Automobile Insurance Providers who according to Farmers' records were provided or should have been provided a Credit Usage Notice from October 1, 1999, through February 28, 2003 (the "Credit Usage Notice Class").

3.    The Court hereby acknowledges and confirms the State, through the Office of the Attorney General, to fulfill the role of the Settlement Classes' Counsel. The Court finds that the Attorney General's office is authorized to bring this class action by the *parens patriae* authority granted in section 17 of article 21.21 of the Insurance Code and Rule 42 of the Texas Rules of Civil Procedure.

4.    Alternatively, if the requirements of Rule 42(a) & (b) and article 21.21 § 18(a) & (b) must be satisfied, then, with respect to the Settlement Classes, this Court finds and concludes that each of those requirements has been met, specifically: (a) each of the Settlement Classes is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Classes which predominate over any individual questions; (c) the claims or defenses brought by the State on behalf of Farmers' policyholders are typical of the claims or defenses of the Settlement Classes and the State is authorized to bring claims on behalf of the Settlement Classes; (d) in negotiating and entering into the Settlement Agreement, the State has fairly and adequately represented and protected the interests of the Settlement Classes; (e) the questions of law or fact common to the Settlement Classes predominate over any questions affecting only individual members; and (f) certifying this Action as a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

5.    The Court further finds that there has been no collusion between the State and the Farmers Parties with respect to negotiating the Settlement Agreement and that the State has represented, and will continue to represent, the interests of the Farmers' policyholders fairly and adequately and without a conflict of interests. Accordingly, the Court preliminarily approves:

(a) the Settlement Agreement, including the terms and the releases set forth therein, as being fair, just, reasonable, and adequate as to each of the parties thereto, and (b) the Settlement Funds described therein, including the Prospective Rate Reduction, Retrospective Rate Reduction, Individualized Discount Adjustment, and Credit Usage Notice Adjustment Fund, and the proposed additional consideration, subject to the right of any member of the Settlement Classes to exclude himself or herself from the Settlement Classes in accordance with the terms set forth in the Settlement Agreement, and to show cause, if any exists, why a Final Judgment should not be entered in accordance with the terms of the Settlement Agreement.

6. A hearing (the "Settlement Hearing") shall be held before this Court on September 29, 2003, at 9:00 a.m. in the 53rd Judicial District Court Room: (a) to determine whether the proposed Settlement Agreement is fair, reasonable, and adequate and should be approved, and whether the Final Judgment should be entered as to claims asserted therein, or which could have been asserted, against the Released Parties on the merits; (b) to determine whether the Settlement Classes members' right to adequate representation has been satisfied; and (c) to reserve jurisdiction to effect and enforce the Settlement Agreement.

7. The Farmers Parties shall disseminate notice of the proposed Settlement Agreement and Settlement Hearing to putative members of the Settlement Classes within thirty (30) days of the date of this Order. A copy of the Notice of Proposed Class Settlement (the "Notice"), together with a copy of the Claim Form, substantially in the form attached hereto as Exhibit A, shall be mailed by first-class U.S. mail, postage prepaid, to all members of the Settlement Classes at the address of each such person as set forth in the records of the Released Parties or as otherwise may be identified through reasonable effort. In addition, commencing within seven (7) days of the date of this Order and continuing until the date of the Settlement

Hearing, the Office of the Attorney General, the Texas Department of Insurance, and the Farmers Parties shall post on their respective Internet web-sites (www.oag.state.tx.us, www.tdi.state.tx.us and www.farmers.com) the Notice and a Summary Notice of Settlement, substantially in the form attached hereto as Exhibit B ("Summary Notice").

8. The Court approves the form of Notice, the Summary Notice, and the Claim Form, and finds that the procedures established for mailing and distributing such notices substantially in the manner and form set forth in paragraph 7 of this Order meet the requirements of Rule 42 of the Texas Rules of Civil Procedure, article 21.21 § 18 of the Texas Insurance Code, and due process, and constitute the best notice practicable under the circumstances.

9. To effectuate the provision of notice provided in paragraph 7 hereof, the Farmers Parties shall be responsible for the receipt of all responses from the members of the Settlement Classes and, until further order of this Court, shall preserve all entries of appearance, Claim Forms, requests for exclusion, and any and all other written communications from members of the Settlement Classes or any other person in response to the Notice. The costs of notification of the Settlement Classes as provided herein, including printing, mailing, and posting on the Internet of all required notices, shall be borne by the party charged with the responsibility for such actions in paragraph 7 of this Order.

10. Three (3) days before the date fixed by this Court for the Settlement Hearing, the State and the Farmers Parties shall cause to be filed with the Clerk of the Court affidavits or declarations of the person or persons under whose general direction the mailing of the Notice and the distribution of the Summary Notice by posting on the web-sites identified in paragraph 7 shall have been made, showing that such mailing and publication have been made in accordance with this Order.

30491649.1                                    -5-

11. Each member of the Settlement Classes will be bound by the proposed settlement provided for in the Settlement Agreement, and by the Final Judgment or any other determination by this Court affecting the Settlement Classes, unless such member shall mail, by first-class U.S. mail, a written request for exclusion from the Settlement Classes, post-marked no later than August 29, 2003, addressed to "Exclusion Requests", c/o Rust Consulting, Inc.; P.O. Box 9348; Minneapolis, MN 55440-9348. Such request for exclusion must state (a) the name, address and telephone number of the person seeking exclusion; (b) whether such person has a homeowners or automobile insurance policy from the Farmers Parties, or both; (c) the date of inception of such policy(ies) and the most recent date of renewal for such policy(ies), if available; (d) the policy number(s), if available; and (e) that the person making the request wishes to be excluded from the Settlement Classes. Because the Settlement Agreement is intended to be a resolution of all Released Claims, any person requesting exclusion must either exclude himself or herself from the Settlement Agreement in its entirety, or submit to the Settlement Agreement in its entirety. A request for exclusion shall not be effective unless it is made in the manner and within the time set forth in this paragraph and in the Notice. If a member of the Settlement Classes requests to be excluded, that person will not receive any benefit from the Retrospective Rate Reduction, the Individualized Discount Adjustment, or the Credit Usage Notice Adjustment Fund provided for in the Settlement Agreement, in the event the Settlement Agreement is approved by the Court, nor will such person be permitted to participate further in the Action. Any Class Member who does not request exclusion in the manner provided for herein may, but need not, enter an appearance in this Action at his or her own cost through counsel of his or her own choice. If a member of the Settlement Classes does not enter an appearance, that person's interests will be represented by the State in the Action.

12. Any member of the Settlement Classes who has not requested exclusion from the Settlement Classes may appear at the Settlement Hearing, in person or through counsel, to object and be heard in opposition to any of the matters to be heard at the Settlement Hearing, including (a) the requested approval of the Settlement Agreement as fair, adequate, and reasonable, and/or (b) the requested entry of the Final Judgment. A member of the Settlement Classes cannot request exclusion from the Settlement Classes AND object to the Settlement Agreement. For any objection to be considered by the Court, the objector must mail a valid written objection, and it must be postmarked by no later than August 29, 2003. In order to be valid, the written objection must set forth (a) a reference, at the top, to "State of Texas v. Farmers, Cause No. GV202501," (b) a statement as to whether the objector intends to appear at the Settlement Hearing, either in person or through counsel, (c) a detailed statement of the specific basis for the objection, (d) the name that is set forth on the Notice that was sent to the objector, (e) the objector's current name, if different from the name set forth on the Notice, (f) the objector's current address, (g) the objector's current telephone number and, if available, telecopier number, (h) the objector's type of policy and policy number, and (i) the objector's signature or that of his or her authorized representative. Three copies of the written objection must be sent, the first addressed to the District Clerk of Travis County, Texas, 1000 Guadalupe Street, Austin, Texas 78701, the second addressed to David C. Mattax, Chief, Financial Litigation Division, P.O. Box 12548, Austin, Texas 78711-2548, and the third addressed to Richard N. Carrell, Fulbright & Jaworski L.L.P., 1301 McKinney, Suite 5100, Houston, Texas 77010-3095. If an objection does not include all of the required information or if it is not timely mailed to the three correct addresses, then it shall be invalid and it will not be considered by the Court. Any member of the Settlement Classes who does not object in the manner provided shall be deemed to have waived

30491649.1

-7-

such objection and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the Settlement Agreement and the proposed Final Judgment.

13. If the Court gives final approval to the Settlement Agreement and enters a final judgment, in order to be entitled to participate in the Credit Usage Notice Adjustment Fund portion of the Settlement Agreement, a member of the Credit Usage Notice Class who has not requested exclusion from the Settlement Classes must submit a Claim Form, substantially in the form attached as Exhibit C hereto, to the Farmers Parties at the address set forth in the Notice. Such Claim Form must be completed and postmarked on or before May 15, 2004. Any member of the Credit Usage Notice Class who does not submit a completed Claim Form shall not be entitled to share in the Credit Usage Notice Adjustment Fund but nonetheless shall be bound by the terms of the Settlement Agreement and by the Final Judgment and any other Order of this Court approving the Settlement Agreement, including all releases therein, and shall be barred and enjoined in this or any other action from asserting any Released Claims.

14. Members of the Rate and Discount Classes shall automatically receive their share of Settlement Funds upon final approval of the Settlement Agreement and entry of final judgment, unless they file a written request for exclusion from the Settlement Classes as provided in paragraph 11 herein.

15. The Court expressly retains the power to adjourn the Settlement Hearing, without any further notice other than an announcement at the Settlement Hearing of adjournment thereof, and to approve, modify, or disapprove the Settlement Agreement without further notice to members of the Settlement Classes. The Court retains jurisdiction over this Action to consider all further applications arising out of or connected with the proposed settlement herein.

30491649.1                                  -8-

16. The administration of the Settlement Agreement, and the decision of all disputed questions of law and fact with respect to the validity of any claim or right of any person to participate in the distribution of the Settlement Fund, shall be under the authority of the Court. The parties to this Settlement Agreement, counsel herein in any capacity in which they may act hereunder, and any employees or agents of such law firms or the parties to the Settlement Agreement (including, without limitation, those employees who may furnish services in connection with the proposed Settlement) shall not be liable for anything done or omitted in connection with the Settlement Agreement and the administration thereof except for their own willful misconduct.

17. The parties to the Settlement Agreement are directed to carry out their obligations under the Settlement Agreement.

18. In the event that the Settlement Agreement is not approved by the Court, or the Court enters the Final Judgment and it is vacated or modified on appeal, or otherwise altered in a material way, or the Effective Date for any other reason does not occur, and if any party to the Settlement Agreement thereafter exercises its right to terminate the Settlement Agreement as provided therein, then the Settlement Agreement and any actions to be taken in connection therewith shall be vacated and terminated and shall become null and void for all purposes, and all negotiations, transactions and proceedings connected with it (a) shall be without prejudice to the rights of any party hereto; (b) shall not be deemed or construed as evidence or an admission by any party of any fact, matter or thing; and (c) shall not be admissible in evidence or used for any purpose in any subsequent proceeding in the Action, or any other action or proceeding in this or any other forum, judicial, administrative, or otherwise, except proceedings to enforce the Settlement.

30491649.1                                    -9-

SIGNED *June 27*, 2003.

_____
PRESIDING JUDGE

# EXHIBIT 2

## AMENDED SETTLEMENT AGREEMENT AND STIPULATION

This Amended Settlement Agreement and Stipulation (the "Settlement Agreement") amends and supersedes the Settlement Agreement and Stipulation entered into on the 18th day of December, 2002, by and among the State of Texas ("Texas"), the Office of the Attorney General ("OAG"), the Texas Department of Insurance ("TDI"), including the Texas Commissioner of Insurance ("Commissioner") (hereafter sometimes referred to collectively as the "State"), and defendants Fire Underwriters Association, Farmers Group, Inc., individually and d/b/a Farmers Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Farmers Texas County Mutual Insurance Company, Truck Insurance Exchange, and Truck Underwriters Association (hereafter sometimes referred to collectively as the "Farmers Parties"). The State and the Farmers Parties (hereafter collectively the "Parties") agree as follows:

## I. DEFINITIONS

For purposes of this Settlement Agreement, the following terms have the meanings specified below:

"Administrative Proceeding" means the Notice of Public Hearing, Docket No. 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.D, To Consider Whether Commissioner's Emergency Cease and Desist Order No. 02-0844 Should Be Affirmed and Whether Disciplinary Action Should Be Taken Against Farmers Insurance Exchange and Fire Insurance Exchange, which TDI issued on or about September 18, 2002.

"AG Lawsuit" means Cause No. GV202501, *The State of Texas and The Texas Commissioner of Insurance v. Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, and Fire Insurance Exchange,* in the 261st Judicial District Court of Travis County, Texas, filed on or about August 5, 2002, and including all amendments thereto.

"Agreed Discounts" means the discounts described in Section IV, Paragraph 3(b), below.

"Associations" means defendants Fire Underwriters Association and Farmers Group, Inc. d/b/a Farmers Underwriters Association, acting as the Exchanges' attorneys in fact.

"Automobile insurance" means private passenger automobile insurance.

"Automobile Insurance Providers" means defendants Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Farmers Texas County Mutual Insurance Company, and Truck Insurance Exchange.

"Cease and Desist Order" means the Cease and Desist Order, No. 02-0844, which the Commissioner signed and entered against the Exchanges, on or about August 13, 2002.

30491689.1

"Claim Form" means the form to be used by applicants for the Credit Usage Notice Adjustment Fund, attached as Exhibit E hereto and addressed in Section IV, Paragraph 4(b) below.

"Commissioner" means the Texas Commissioner of Insurance.

"Court" means the 261st Judicial District Court of Travis County, Texas, in which the AG Lawsuit was filed.

"Credit Period" shall have the meaning given it in Section IV, Paragraph 2, below.

"Credit Usage Notice" means a notice of adverse action under the Fair Credit Reporting Act.

"Effective Date" means the date by which all of the following have occurred: (i) an Order of Preliminary Approval has been entered by the Court in the AG Lawsuit giving notice of a hearing on the Settlement of the Settlement Classes' claims; (ii) the Court has approved the Settlement in all respects; (iii) a Final Judgment as described below shall have been entered by the Court and not vacated, stayed, or modified in any material way, upon appeal or otherwise; and (iv) either the time to appeal or otherwise seek review of the Final Judgment has expired without any appeal having been taken or review sought, or if an appeal is taken or review sought, the expiration of five days after such an appeal or review shall have been finally determined by the highest court before which appeal or review is sought and is not subject to further judicial review.

"Exchanges" means Farmers Insurance Exchange and Fire Insurance Exchange.

"Exchanges Lawsuit" means Cause No. GN-203156, *Farmers Insurance Exchange and Fire Insurance Exchange v. Jose Montemayor, individually and in his capacity as Texas Commissioner of Insurance, and Texas Department of Insurance*, in the 353rd Judicial District Court of Travis County, Texas.

"FARA" means Farmers Auto Risk Assessment.

"FCRA" means the Fair Credit Reporting Act.

"Credit Usage Notice Adjustment Fund" shall have the meaning given it in Section IV, Paragraph 4, below.

"FPRA" means Farmers Property Risk Assessment.

"Homeowners insurance" means and includes policies written on TDI-promulgated forms described as HO-A (including TDP-1), HO-B (as defined in "Released Claims"), HO-B-CON, and HO-B-T, and all endorsements, promulgated or approved, for use with such forms.

"IDA Eligibility" shall have the meaning given it in Section IV, Paragraph 3(a), below.

"Individualized Discount Adjustment" shall have the meaning given it in Section IV, Paragraph 3, below.

"Final Judgment" means a final judgment to be rendered by the 261st Judicial District Court of Travis County, Texas, substantially in the form attached as Exhibit K hereto.

"MOU" means the Memorandum of Understanding between and among the Parties, which was signed by authorized representatives of the Parties on November 30, 2002.

"Notice of Proposed Class Settlement" means the notice of this Settlement Agreement and of the Settlement Hearing substantially in the form of Exhibit B hereto that is to be made available to all persons in the Settlement Classes pursuant to Section III, Paragraph 7 below.

"OAG CIDs" means all Civil Investigative Demands that OAG has served on the Released Parties and that are outstanding as of the date of this Settlement Agreement. These OAG CIDs are listed in the attached Exhibit N.

"Opt-Out Claimant" means a member of the Settlement Classes who submits a timely and valid request for exclusion in accordance with the Order of Preliminary Approval and the Notice of Proposed Class Settlement, and who does not revoke that request for exclusion in writing at least seven (7) days prior to the Settlement Hearing. Such requests for exclusion shall apply to all of the Released Claims which a given Opt-Out Claimant has against the Released Parties.

"Opt-Out Claims" means Released Claims that belong to Opt-Out Claimants. Opt-Out Claims are not settled by this Settlement Agreement.

"Order of Preliminary Approval" means an order substantially in the form attached as Exhibit A hereto.

"Prospective Rate Reduction" shall have the meaning given it in Section IV, Paragraph 1, below.

"Released Claims" means and includes, with respect to homeowners insurance offered or sold by the Released Parties, all existing, known and unknown claims, demands and causes of action against the Released Parties, whether pending or threatened, suspected or unsuspected, contingent or non-contingent, for all existing, known and unknown damages and remedies that arise out of or relate to the acts and/or occurrences alleged in the AG Lawsuit, or in the Cease and Desist Order or the Administrative Proceedings, or in the OAG CIDs to the extent any such acts or occurrences took place prior to November 30, 2002 including but not limited to issues concerning or related to a management fee or fees, the placement of policyholders in a particular insuring entity, the age of home discount, the unfunded catastrophe load, the decision to no longer offer HO-B policies (including HO-Protector Plus (PTP), HO380 endorsement, TDP-2, TDP-3, DF-Builder's Risk, and HO-A with HO-170 endorsement (collectively referred to herein as "HO-B")), the offering of HO-A policies in place of HO-B policies, territorial discounts, credit scoring, the use of the Farmers Property Risk Assessment, or the rates that the Released Parties have charged for homeowners policies and endorsements and all notices and statements that the Released Parties have made or issued in connection with the above, including but not

limited to the notices of non-renewal of the HO-B policies and notices issued pursuant to the Fair Credit Reporting Act. The State's release of claims against Texas Farmers Insurance Company related to credit scoring is expressly based on Texas Farmers Insurance Company's representation that it does not and has not used credit scores, insurance scores, credit reports or any other method of calculating premiums based on credit history. "Released Claims" also include any claims, demands, or causes of action to the effect that the discounted rates adopted by the Exchanges from November 11, 2002, through and including August 31, 2003, are unfair, unreasonable, discriminatory, misleading or excessive. With respect to the automobile insurance offered or sold by the Released Parties, "Released Claims" includes all existing claims, demands, and causes of action related only to the disclosure or nondisclosure of consumer credit information or the disclosure or nondisclosure of the use or effect of using consumer credit information, including claims under the Fair Credit Reporting Act. "Released Claims" does not include individual claims or complaints about claims payments, handling or processing pursued by individual claimants directly or such individual claims or complaints about claims payments, handling or processing as may be pursued by TDI under Article 21.55, Texas Insurance Code, which are identified in a schedule which has been provided by TDI to the Farmers Parties. Remedies for any such scheduled claims or complaints, if pursued by the TDI, shall be limited to the payment of interest under article 21.55, section 6, of the Texas Insurance Code (which interest is not part of the total value of this settlement), as the result of non-compliance with that statute, and may not include fines or penalties or any other relief, except relief may include corrective action respecting procedures. "Released Claims" also does not include claims that have been asserted in Cause No. GV000271, *State of Texas v. Texas Farmers Insurance Company, et al.*, which is pending in the 200th Judicial District Court of Travis County, Texas, and which relates to betterment in the context of automobile insurance in the Texas market.

"Released Parties" means and includes Farmers Group, Inc., individually and d/b/a Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Farmers Texas County Mutual Insurance Company, Truck Insurance Exchange, and Truck Underwriters Association, as well as their affiliates, officers, employees, agents, directors or governors, representatives, attorneys, predecessors, successors and assigns.

"Releasing Parties" means and includes Texas, the OAG (both on behalf of Texas and, subject to Court approval, the members of the Settlement Classes defined below), the TDI, and the Commissioner.

"Retrospective Rate Reduction" shall have the meaning given it in Section IV, Paragraph 2, below.

"Settlement" shall have the meaning given it in Section II, below.

"Settlement Classes" means and includes (1) all of the Exchanges' Texas homeowners insurance policyholders (a) whose homeowners insurance policy incepted (including renewals) from December 28, 2001, through and including December 27, 2002, or (b) who received a notice at any time after November 14, 2001, that their HO-B policy would not be renewed (the "Rate Class"); (2) all of the Exchanges' Texas homeowners insurance policyholders who

according to Farmers records were eligible to receive discounts for FPRA, age of home, or territory from November 16, 2000, through and including December 10, 2002 (the "Discount Class"); and (3) all Texas homeowners or automobile insurance policyholders of the Exchanges or the Automobile Insurance Providers who according to Farmers records were provided or should have been provided a Credit Usage Notice from October 1, 1999, through February 28, 2003 (the "Credit Usage Notice Class").

"Settlement Class Members" means all members of the Settlement Classes except for Opt-Out Claimants.

"Settlement Fund" shall have the meaning given it in Section IV, below.

"Settlement Hearing" means the hearing to be held before the District Court of Travis County, Texas, to determine (a) whether this Settlement Agreement, including the Settlement Fund and the attached exhibits, should be approved as fair, adequate and reasonable; and (b) whether the Final Judgment should be entered.

"Summary Notice of Settlement" shall have the meaning given it in Section III, Paragraph 7, below.

## II. RECITALS

WHEREAS, on or about October 1, 1999, the FARA discount program was introduced in Texas for the Farmers Parties' automobile policyholders;

WHEREAS, on or about November 16, 2000, the FPRA discount program was introduced in Texas for the Farmers Parties' homeowners policyholders;

WHEREAS, on or about November 9, 2001, the Exchanges announced they would no longer renew Texas HO-B homeowners policies;

WHEREAS, on or about November 14, 2001, the Exchanges began issuing notices of non-renewal of HO-B policies to Texas HO-B homeowners insureds;

WHEREAS, on or about January, 2002, the TDI initiated a market conduct examination of the Farmers Parties pursuant to article 1.15 of the Texas Insurance Code;

WHEREAS, on or about December 28, 2001, Fire Insurance Exchange began offering Texas HO-A homeowners policies for former HO-B insureds;

WHEREAS, on or about March 20, 2002, Farmers Insurance Exchange began offering Texas HO-A homeowners policies for former HO-B insureds;

WHEREAS, on or about August 5, 2002, the OAG, on behalf of Texas and the TDI, brought the AG Lawsuit against the Farmers Parties;

WHEREAS, on or about August 13, 2002, the TDI brought an Application for Emergency Cease and Desist Order against the Exchanges;

WHEREAS, on or about August 13, 2002, the Commissioner entered the Cease and Desist Order against the Exchanges;

WHEREAS, on or about August 14, 2002, the TDI filed a Report to the Commissioner of Insurance concerning the Exchanges;

WHEREAS, the OAG has served the "OAG CIDs" on the Released Parties;

WHEREAS, on or about August 30, 2002, the Exchanges brought the Exchanges Lawsuit against the Commissioner and TDI, appealing from the Cease and Desist Order and also seeking a declaratory judgment that, *inter alia*, the Commissioner and TDI lack the authority to issue the Cease and Desist Order and to institute disciplinary action as outlined in the Report to the Commissioner of Insurance filed by TDI on or about August 14, 2002;

WHEREAS, on or about September 18, 2002, the TDI commenced the Administrative Proceedings against the Exchanges;

WHEREAS, on or about September 24, 2002, the Exchanges gave notice to their Texas homeowners insureds that the Exchanges would not be offering coverage or renewing homeowners insurance policies, with effective dates of such non-renewal action falling between November 11, 2002 and November 10, 2003, and also notified their agents they would accept no new business after November 11, 2002;

WHEREAS, on November 13, 2002, TDI agreed to extend the effective date of the Cease and Desist Order for thirty days through December 10, 2002, to allow the Parties an opportunity to negotiate a settlement of these matters and the Exchanges, in turn, agreed to continue offering coverage and renewing homeowners insurance policies until December 10, 2002, with a base rate reduction of 6.8% from the rate structure used in the period immediately prior to November 2002;

WHEREAS, after considering the benefits to be gained under the Settlement Agreement, the risks associated with continuing to prosecute this complex and time-consuming litigation, the likelihood of success on the merits of the litigation, the public interest in an efficient market for homeowners and automobile insurance, the welfare of Texas' consumers, and to avoid further expense and inconvenience, the State believes this Settlement Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Classes;

WHEREAS, the Farmers Parties, while denying each of the claims alleged herein and further denying wrongdoing of any kind whatsoever, and without admitting liability, have agreed to enter into the Settlement Agreement to avoid further expense, inconvenience, and the distraction of a burdensome and lengthy litigation, and in order to be completely free of any further controversy with respect to the Released Claims;

WHEREAS, the Parties have agreed that there should be a global settlement of all of the Released Claims, as herein defined, and this document sets forth the terms of the Parties' settlement agreement, which was reached after arms' length negotiations between the State and the Farmers Parties (the "Settlement");

NOW THEREFORE IT IS AGREED by the Parties that subject to approval of the Judicial District Court of Travis County, Texas, the AG Lawsuit, the Administrative Proceeding, the Exchanges Lawsuit, and the other matters in Section IX below are conditionally settled, on the following terms and conditions:

## III. CERTIFICATION OF SETTLEMENT CLASSES

1. The Parties shall promptly and jointly submit this Settlement Agreement, including the exhibits hereto, to the Court for preliminary approval.

2. The State will seek, and the Farmers Parties agree to, conditional certification of the Settlement Classes pursuant to this Settlement Agreement. The Farmers Parties do not agree to certification of the Settlement Classes for any purpose other than to effectuate this Settlement Agreement. In the event that the Court were not to approve and certify the Settlement Classes in all respects as defined in this Settlement Agreement, (1) any stipulations and agreements made herein are null and void and (2) it is understood that the Farmers Parties would challenge the certification of a litigation class and nothing relating to this Settlement Agreement will be introduced into evidence or used in any way to impede the exercise of that right.

3. The State shall file a motion for preliminary approval that requests the Court to enter an Order of Preliminary Approval substantially in the form of Exhibit A hereto.

4. The Parties agree that the Court may enter an order conditionally certifying the Settlement Classes and appointing the State of Texas, through the Attorney General, as counsel for the Settlement Classes.

5. If this Settlement Agreement is terminated pursuant to its terms, or if the Effective Date does not occur for any reason, the conditional certification of the Settlement Classes shall be vacated.

6. In proceedings before the Court (and before any appellate courts, if necessary), the State shall affirmatively present their support for certification of the Settlement Classes and for final judicial approval of the Settlement Agreement.

7. Subject to the Court's prior preliminary approval of the Settlement Agreement (including the exhibits hereto), the Farmers Parties shall assume responsibility for identifying, locating, and providing a copy of the Notice of Proposed Class Settlement, substantially in the form attached as Exhibit B hereto, to as many members of the Settlement Classes as is reasonably practicable by means of a direct mailing to such Settlement Classes members' most recent address in the Farmers Parties' records. In addition, the OAG, TDI and the Farmers Parties shall disseminate a Summary Notice of Settlement, in the form attached hereto as Exhibit C, by posting the Summary Notice of Settlement through their respective web-sites (www.farmers.com, www.oag.state.tx.us, and www.tdi.state.tx.us) beginning as soon as practicable after the Court's entry of the Order of Preliminary Approval and continuing until the date of the Settlement Hearing. The full Notice of Proposed Class Settlement also shall be made available through these web-sites over the same period of time. In order to avoid any confusion, no other documents interpreting the Settlement Agreement or the Notice of Proposed Class

Settlement, or the provisions or effect of such documents, will be posted without prior Court approval.

## IV. SETTLEMENT FUND

In conjunction with the settlement of the Released Claims, the Released Parties agree to create a settlement fund ("Settlement Fund") with the following components:

1. **Prospective Rate Reduction.** Subject in all respects to Paragraph 1(b) below, the Exchanges agree (1) to reduce their HO-A primary contract homeowners insurance (excluding endorsements) base rates in effect as of November 10, 2002 in the overall average amount of 6.8%, based on a statewide average rate indication for all classes, effective as of November 11, 2002 (the "Prospective Rate Reduction"), (2) to refrain from any increase in those base rates that would take effect prior to midnight on August 31, 2003, provided, however, that rates can be changed to include charges for any existing endorsement or any new endorsements approved by TDI or for coverage changes requested by policyholders, and (3) for the period December 11, 2002 through August 31, 2003, to adopt the Agreed Discounts described in Section IV, Paragraph 3(b) hereof.

a. The reduction in premiums contemplated by the Prospective Rate Reduction will be undertaken for all Texas policyholders who renew an existing HO-A homeowners' insurance policy through the Exchanges or obtain a new policy.

b. It is understood and agreed to by the Parties that adopting the Agreed Discounts as contemplated under this settlement will change each customer's rate even though the 6.8% reduction is made to the base rate;

c. If legislation or regulation is hereafter enacted that has the effect of requiring or compelling the Exchanges to implement a rate reduction or rollback, then:

(1) The Exchanges' obligation to issue or grant credits or refunds under the Prospective Rate Reduction and, if the legislation or regulation is retroactive, under the Retrospective Rate Reduction, will be reduced by the amount of the rate reduction or rollback to customers mandated by such legislation or regulation;

(2) In the event any such rate reduction or rollback is enacted or adopted, the Exchanges' rates and rate structures on the day before the effective date of any such rate reduction or rollback shall be deemed to revert back to the rates and rate structures in effect as of November 10, 2002. Under no circumstances would such rate reduction or rollback be applied to the Exchanges' rates in effect as the result of the Prospective Rate Reduction, the Retrospective Rate Reduction, or any other term of this Settlement Agreement.

2. **Retrospective Rate Reduction.** In addition to the Prospective Rate Reduction, for all Texas policyholders who were insured under an HO-A policy form issued by the Exchanges at any time during the period commencing on December 28, 2001 up to and including November 10, 2002 (the "Credit Period"), the Exchanges agree to fund a Retrospective Rate

Reduction in the amount of 6.8% of the base premium for the HO-A policy form earned by the Exchanges during those policies' actual term ("Retrospective Rate Reduction").

a. For those Texas policyholders who were insured under an HO-A policy form issued by the Exchanges during the Credit Period but such policy is no longer in effect or is not renewed at the next renewal date after the 30th day following the Effective Date, the Retrospective Rate Reduction shall be paid by means of a refund check based on each individual HO-A policy's base rate premium earned with appropriate release language in favor of the Released Parties as an endorsement. Refund checks in payment of the Retrospective Rate Reduction will be processed and paid on the later of:

(1) Forty-five (45) days after the end of the original annual term covered by the policy in question, which schedule will apply even if the policy is terminated prior to the end of the policy period, or

(2) Thirty (30) days after the Effective Date.

b. For those Texas policyholders who were insured under an HO-A policy form issued by the Exchanges during the Credit Period with coverage going forward beyond the next renewal date after the 30th day following the Effective Date, the Retrospective Rate Reduction shall be applied as a credit. Unearned policy premiums that may be returned to the policyholder shall not include the credit. The credit shall be applied to the first premium notice for such HO-A policies renewed after the 30th day following the Effective Date.

3. **Individualized Discount Adjustment.** In addition to the Prospective Rate Reduction and Retrospective Rate Reduction described above, and with respect to Texas homeowners insurance policyholders who did not receive the Agreed Discounts for FPRA, age of home, and territory at any time during the period commencing November 16, 2000, continuing through and including December 10, 2002, the day immediately preceding the adoption of the Agreed Discounts described in Paragraph 3(b) below, the Exchanges agree to fund an "Individualized Discount Adjustment" payment.

a. Payments to individual Texas homeowners insurance policyholders for the Individualized Discount Adjustment shall be determined in the following fashion: The Individualized Discount Adjustment payment for each Texas policyholder equals the amount by which the premium actually charged for the Texas policyholder's policy exceeded the premium which would have been charged if the Exchanges had adopted discounts for FPRA, age of home, and territory elements at the Agreed Discounts on a revenue neutral basis, rather than the lesser discounts which were actually adopted on a revenue neutral basis (the "IDA Eligibility") as provided in Paragraph 3(b) below. In calculating each policyholder's IDA Eligibility, if the aggregate of the three discount factors (FPRA, age of home, or territory) results in a negative value for that individual, then the Individual Discount Adjustment shall be considered a zero.

b.. The Parties' actuaries have met and agreed on discounts for FPRA and age of home, as well as territorial rate revisions, to be applied for purposes of the Individualized Discount Adjustment and also to be applied to the same factors for the period identified in Section IV, Paragraph 1 hereof (the "Agreed Discounts"). For informational purposes, schedules setting forth the Agreed Discounts for the FPRA and age of home discounts and the territorial rate revisions to be applied for purposes of the Individualized Discount Adjustment are attached as Exhibits D-1 and D-3, and schedules setting forth the Agreed Discounts for the FPRA and age of home discounts and the territorial rate revisions to be applied commencing December 11, 2002, and continuing through and including August 31, 2003, are attached as Exhibits D-2 and D-3.

c. No Individualized Discount Adjustment benefits shall be paid or credited prior to the Effective Date.

d. Credits and payment of the Individualized Discount Adjustment shall be made in the same manner and at the same time as the Retrospective Rate Reduction listed above.

e. Thirty (30) days after the final payment is made or credit provided under this section dealing with the Individualized Discount Adjustment, the Released Parties shall report to the OAG and TDI the amounts so paid and credited.

4. **Credit Usage Notice Adjustment Fund.** In addition to the Prospective Rate Reduction, the Retrospective Rate Reduction, and the Individualized Discount Adjustment, the Released Parties further agree initially to provide funds in the total amount of $3.0 million, but will provide additional funds if necessary (hereafter the "Credit Usage Notice Adjustment Fund"), for the purpose of reimbursing any overcharges that may have occurred to homeowners or automobile insurance policyholders whose policies were issued by the Released Parties in Texas and who paid a premium for automobile or homeowners insurance that would have been less, but for erroneous credit information on the individual's credit history maintained at the credit bureau which led to FPRA or FARA discounts lower than would have resulted from correct credit information or to assignment to a company affiliated with the Farmers Parties having a higher premium structure.

a. Eligibility for the Credit Usage Notice Adjustment Fund is limited to individuals who were issued an automobile or homeowners insurance policy by one or more Released Parties during the time period October 1, 1999, through February 28, 2003.

b. Submission of a completed Claim Form in the form attached hereto as Exhibit E ("Claim Form"), postmarked by May 15, 2004, is a prerequisite to any individual receiving a payment from the Credit Usage Notice Adjustment Fund. A Claim Form will be considered complete if it provides all of the requested information except a policy number, policy effective date, agent's name, and vehicle identification number, so

long as the information provided is sufficient to identify the claimant from the records of the Released Parties after a good faith effort.

      c.     Any fee charged by a credit agency to a Released Parties' policyholder in order to provide credit history information in connection herewith that is not waived shall be paid from the Credit Usage Notice Adjustment Fund.

      d.     The Credit Usage Notice Adjustment Fund shall terminate on the later of June 15, 2004, or 30 days after the Effective Date. To the extent that there is a remaining balance in the Credit Usage Notice Adjustment Fund as of this termination date, such remaining balance shall revert to the Released Parties.

      e.     In agreeing to create the Credit Usage Notice Adjustment Fund, the Parties agree that the Released Parties have denied that there have been any overcharges to Texas policyholders as the result of erroneous FPRA or FARA assignments. The Parties further agree that neither this Settlement Agreement, nor the MOU, nor anything stated herein or in the MOU or in connection with the Settlement should be construed or interpreted as an admission or evidence of any wrongdoing or liability by any of the Released Parties or of any violation of state or federal law, including without limitation the Fair Credit Reporting Act.

      f.     Payments from the Credit Usage Notice Adjustment Fund shall be made by means of a refund check. Refund checks in payment of the Credit Usage Notice Adjustment Fund will be processed and paid on the later of:

      (1)     Thirty (30) days after receipt of a completed Claim Form, or

      (2)     Thirty (30) days after the Effective Date.

      g.     On or before August 15, 2004, the Released Parties shall provide a report to the OAG and TDI which reflects the total number of Claim Forms submitted; the total dollar amount of payments made to persons eligible to participate in the Credit Usage Notice Adjustment Fund; the total number of persons who were mailed checks; and the total number and dollar amount of negotiated checks.

      h.     As soon as possible after January 15, 2003, but no later than February 28, 2003, for new and renewed Texas homeowners and automobile policies, the Released Parties shall replace the existing Credit Usage Notice with appropriate notices in the forms attached hereto as Exhibits F, G, H and I. Each notice must be in a minimum of 12 point type clearly marked as IMPORTANT INSURANCE INFORMATION. The text will be on a separate piece of paper than any other writing and the notice will not be attached to or incorporated into any other document.

      5.     **Payment or Credit of 100%.** With regard to the Individualized Discount Adjustment and the Credit Usage Notice Adjustment Fund, Released Parties have committed to a payment or credit of 100% of any premium differential resulting from the adjustment process set forth in Section IV, Paragraphs 3 and 4. It is not feasible to calculate in advance the amount, if any, to be paid to each class member. These calculations, which will require individualized

calculations, will be made by Released Parties and reported to the Office of the Attorney General and the Texas Department of Insurance, and will be subject to verification by the Texas Department of Insurance.

6. **Unclaimed Funds.** The cash components of the Settlement Fund shall be evidenced by a check that shall be valid for not less than 120 days after issuance. Any such checks that are uncashed, unclaimed, undeliverable, or not negotiated after 120 days shall be subject to Texas Property Code § 72.001 *et seq.*

7. **Mailing of Checks.** All checks to Settlement Class Members mailed under this Settlement Agreement must be accompanied by a letter and release language in the form attached as Exhibit J.

8. **Attorneys' Fees and Investigative Costs.** No later than 30 days after the Effective Date, the Farmers Parties shall pay a total of $2 million to the State of Texas for its attorneys' fees, expenses, and costs of investigation.

9. **Estimated value.** Based upon the Parties' assumptions and projections, the estimated total value of the Settlement is $117,500,000.

10. **Accounting Treatment for Settlement Fund Payments and Credits.** All amounts paid or credited to policyholders for the Retrospective Rate Reduction, the Individualized Discount Adjustment, and the Credit Usage Notice Adjustment Fund components shall be treated and accounted for by the Farmers Parties as a return of written premiums. The Farmers Parties shall also prepare such amendments as necessary to their previously reported statistical plan filings to reflect a reduction in direct written premiums for amounts paid for the above referenced components.

## V. RELEASE

On the Effective Date, the State, for itself and for the Settlement Class Members, RELEASES, ACQUITS, and FOREVER DISCHARGES the Released Parties from all Released Claims.

## VI. FINAL JUDGMENT

At the Settlement Hearing, a Final Judgment, substantially in the form attached as Exhibit K hereto, will be submitted to the Court, and entry requested. Among other things, the Final Judgment directs that the Judicial District Court of Travis County, Texas, expressly retains jurisdiction to enforce and modify the relief granted in the Final Judgment, including injunctive relief, to the fullest extent allowed by Texas law. The Parties also specifically agree that the venue for any dispute arising under this Settlement Agreement shall be in the District Court of Travis County, Texas.

## VII. OTHER CONSIDERATIONS REGARDING SETTLEMENT CLASSES

1. In the event that the Court were to alter or make any change in the Settlement Classes or this Settlement Agreement (including the Settlement Fund) or to decline to approve

the Settlement Classes and this Settlement Agreement (including the Settlement Fund) in all respects, any of the Parties to this Settlement Agreement shall have the right to terminate the Settlement and this Settlement Agreement. In the event of such termination, no further payments or credits will be made under the Settlement Fund and all releases and dismissals executed hereunder will become null and void. In addition, the Exchanges' obligation to reduce HO-A policy form base rates under the Prospective Rate Reduction and to refrain from any increase in those rates prior to midnight on August 31, 2003 (as described in Section IV, Paragraph 1, hereof) would immediately terminate and no longer be binding on the Exchanges.

2.      Any' person within the Settlement Classes as defined may request not to participate as a member of the Settlement Classes, by submitting a timely request for exclusion in accordance with the Order of Preliminary Approval and the Notice of Proposed Class Settlement. To be effective, any person requesting exclusion from the Settlement Classes *must* submit a timely written request for exclusion. Such written request *must* contain all of the information described in the discussion of Exclusion Requests that is contained in the Notice of Proposed Class Settlement, and it *must* be sent to the address specified in the Notice of Proposed Class Settlement, by first class mail, postmarked no later than thirty (30) days before the date scheduled for the Settlement Hearing. Any person who submits such a timely written request and who does not revoke that request for exclusion in writing at least seven (7) days prior to the Settlement Hearing, is an Opt-Out Claimant. An Opt-Out Claimant thereby elects not to participate in any benefits or payments under the Settlement Fund or this Settlement Agreement and is deemed to have waived any and all claims to any part of the Settlement Fund.

3.      A Settlement Classes member who does not opt out may submit objections, if any to (a) certification of the Settlement Classes; (b) the terms of the Settlement Agreement, including the exhibits hereto; or (c) the proposed form of Final Judgment. In order for any such objection to be considered by the Court at the Settlement Hearing, the objection *must* (a) contain all of the information described in the discussion of Objections that is contained in the Notice of Proposed Class Settlement and (b) be sent to the addresses specified in the Notice of Proposed Class Settlement, by first class U.S. mail, postmarked no later than the date specified by the Court.

4.      All Parties shall undertake to encourage participation of the putative class members in the Settlement Classes. In the event that more than 2% of the policyholders eligible to receive benefits from the Retrospective Rate Reduction or Individualized Discount Adjustment portions of the Settlement Fund were to opt out of the Settlement Classes, any of the Parties to this Settlement Agreement shall have the right to terminate the Settlement and this Settlement Agreement.

5.      Any policyholder whose HO-B policy was non-renewed by Farmers Insurance Exchange and who accepted an HO-A policy from Fire Insurance Exchange between December 28, 2001 through and including March 20, 2002, upon request, will be offered an HO-A policy from Farmers Insurance Exchange, if they qualify.

## VIII. NO ADMISSION OF LIABILITY

In entering into this Settlement Agreement, the Parties agree that the Released Parties have denied, and continue to deny, any wrongdoing or liability with respect to the claims that have been made in the AG Lawsuit, the Cease and Desist Order, the Administrative Proceedings and the OAG CIDs, or that have been made or could have been made by or on behalf of the Exchanges' individual policyholders in any other forum arising out of or relating to the subject matters of the AG Lawsuit, the Cease and Desist Order, the Administrative Proceedings or the OAG CIDs. The Parties further agree that neither this Settlement Agreement nor anything stated herein or in connection with the Settlement should be construed or interpreted as an admission or evidence of any wrongdoing or liability by any of the Released Parties. The Released Parties are entering into this Settlement Agreement and the Settlement in order to avoid the further expense and burden of protracted litigation.

## IX. RELATED PROCEEDINGS

1.      **Dismissal With Prejudice of Administrative Proceeding, Setting Aside of Cease and Desist Order, and Related Matters.** TDI will request that the Administrative Law Judge in the Administrative Proceeding dismiss with prejudice TDI's claims in the Administrative Proceeding, substantially in the form attached hereto as Exhibit L, and the Commissioner will enter a final order, substantially in the form attached as Exhibit M hereto, that dismisses those claims with prejudice and that also provides (a) the findings of the Commissioner in the Cease and Desist Order are set aside in their entirety; (b) the Cease and Desist Order is set aside in its entirety; (c) the findings and order shall be of no further force and effect whatsoever; and (d) neither the findings nor the order may be utilized as evidence of, or be used or relied upon by any person in any proceeding as evidence of, any alleged violation of law or breach of contract by the Released Parties. The State agrees that the Application for Emergency Cease and Desist Order, dated August 13, 2002, by Karen A. L. Barratt ("Application") is of no further force and effect whatsoever, and neither the Application nor the Order may be used as evidence of, or be used or relied upon by any person in any proceeding as evidence of, any violation of law or breach of contract by the Released Parties. TDI also will set aside in its entirety and with prejudice, substantially in the form contained in the Commissioner's Order attached as Exhibit M hereto, the (1) the Report concerning Farmers Insurance Exchange and Fire Insurance Exchange dated August 14, 2002, and (2) the "Notice of Report to Commissioner; Alleged Violations by Farmers Insurance Exchange and Fire Insurance Exchanges," dated August 14, 2002. The State agrees that, upon such setting aside, the Report is of no further force and effect whatsoever; and that such Report may not be used as evidence of, or be used or relied upon by any person in any proceeding as evidence of, any violation of law or breach of contract by the Released Parties.

2.      **Termination of OAG CIDs.** All OAG CIDs issued to the Released Parties (listed in Exhibit N hereto) shall be withdrawn and all associated investigations as to the Released Parties shall be terminated. The investigations associated with the time periods covered by each CID are concluded and there will be no new investigations or CIDs for these time periods. The Farmers Parties also will dismiss with prejudice their challenges that have been filed in the district courts of Travis County to certain of the OAG CIDs, substantially in the form of the example attached as Exhibit O hereto.

30491689.1                                          -14-

3. **Termination of Market Conduct Examination.** The market conduct examination of the Exchanges commenced by TDI in January 2002 pursuant to article 1.15 of the Texas Insurance Code, and all associated investigations, shall be terminated and no new investigation will commence concerning Released Claims. The market conduct examination report has never been finalized and shall be withdrawn in its entirety and with prejudice, in the form attached as Exhibit M hereto, and shall not be used in evidence of or relied upon by any person in any proceeding as evidence of any violation of law or breach of contract by the Released Parties.

4. **Dismissal With Prejudice of Exchanges' Lawsuit and Counterclaim.** The Exchanges agree that they will dismiss with prejudice the claims that the Exchanges made against TDI and the Commissioner and Jose Montemayor, individually, in the Exchanges Lawsuit, substantially in the form attached as Exhibit O hereto. The Farmers Parties also will dismiss with prejudice their counterclaim in the AG Lawsuit, substantially in the form contained in the Final Judgment attached as Exhibit K hereto. The dismissal of the Farmers Parties' counterclaim in the AG Lawsuit shall have no effect on obligations set forth in the Protective Orders entered therein regarding the Parties' continuing duties regarding confidential documents or documents produced under seal or in camera.

5. **Abatement Pending Effective Date.** Upon execution of this Settlement Agreement, counsel for the Parties in the legal proceedings referenced in this Section IX, Paragraphs 1-4 above, will take all appropriate steps to stay or abate those matters until either (a) the Final Judgment entered in accord with Section VI of this Settlement Agreement becomes final and no longer subject to appeal or review, or (b) the Court refuses or declines to enter the Final Judgment in accord with this Settlement Agreement, or (c) such a Final Judgment is reversed or vacated on appeal, or (d) it becomes impossible for the Effective Date to occur for any reason. If the Effective Date occurs, then the Parties agree that, within thirty (30) days after the Effective Date, they will take the appropriate steps in the cases listed in this Section IX to enter the indicated dismissals with prejudice.

6. **Management fee.** For the Released Parties and any other company or reciprocal or inter-insurance exchange associated or affiliated with the Released Parties, and regardless of whether such entity is or is not subject to rate regulation in Texas, TDI agrees henceforward that it will not consider the management fee (profits or expenses) as a separate element in its evaluation of such company's expense structure or consider such management fee in the benchmark rate process generally, but may consider the over-all expense component of the rate as it compares the companies' expenses with other agency distribution companies doing business in Texas. This section does not preclude TDI from evaluating overall rate levels as authorized by law.

## X. OTHER PROVISIONS

1. **Cooperation.** It is the mutual intent of the Parties to consummate this Settlement Agreement promptly. The Parties therefore agree to cooperate and to exercise their best efforts to the extent necessary to effectuate and implement all of its terms and conditions as quickly as possible. The OAG, TDI, and the Commissioner further agree to comply with all reasonable requests for assistance that the Released Parties may make in order to give effect to the purposes

of the Settlement, including (without limitation) providing affidavits and/or testimony in connection with any lawsuits, claims or demands that have been made or could have been made by or on behalf of the Released Parties' policyholders in any forum arising out of or relating to the subject matters of the AG Lawsuit (as amended), the Cease and Desist Order, or the Administrative Proceedings. The intent and spirit of this Settlement Agreement is to terminate all of the disputes arising out of and relating to the Released Claims, except as provided herein, and to permit the Farmers Parties to continue to provide insurance in the Texas market. The Parties agree to take all reasonable steps and exercise best efforts to achieve that goal. As an initial step towards the restoration of a correct and constructive relationship between the Released Parties and the TDI, the TDI agrees that should it have concern in the future about any practice undertaken by the Released Parties, it will use its best efforts as authorized by statute to contact the appropriate representative of the Released Parties to discuss and hopefully resolve any such concerns. The Released Parties will use their best efforts to notify the TDI, in advance, of any material changes in their course of conduct.

2.    This Settlement Agreement and the Exhibits hereto constitute the entire agreement among the Parties. All other agreements and understandings between the Parties, including the MOU, are superseded by this Settlement Agreement.

3.    This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of the Parties or their successors in interest.

4.    Except as otherwise expressly provided in this Settlement Agreement, each Party shall bear its own costs, including taxable court costs.

5.    The undersigned each represent that he or she is fully authorized to execute this Settlement Agreement on behalf of the Parties for which he or she signs.

6.    This Settlement Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective agents, representatives, successors and assigns. This Settlement Agreement can be signed in multiple counterparts.

THE STATE OF TEXAS, AND THE OFFICE OF THE ATTORNEY GENERAL

By: Jeffrey S. Boyd    6/13/03
Deputy Attorney General

TEXAS DEPARTMENT OF INSURANCE

_[signature]_

JOSE MONTEMAYOR, INDIVIDUALLY AND
AS COMMISSIONER, TEXAS DEPARTMENT
OF INSURANCE .

_[signature]_

FARMERS INSURANCE EXCHANGE

_____

FIRE INSURANCE EXCHANGE

_____

FIRE UNDERWRITERS ASSOCIATION

_____

FARMERS GROUP, INC., INDIVIDUALLY AND
D/B/A FARMERS UNDERWRITERS
ASSOCIATION

_____

TEXAS DEPARTMENT OF INSURANCE

_____

JOSE MONTEMAYOR, INDIVIDUALLY AND
AS COMMISSIONER, TEXAS DEPARTMENT
OF INSURANCE

_____

FARMERS INSURANCE EXCHANGE

_____

FIRE INSURANCE EXCHANGE

_____

FIRE UNDERWRITERS ASSOCIATION

_____

FARMERS GROUP, INC., INDIVIDUALLY AND
D/B/A FARMERS UNDERWRITERS
ASSOCIATION

_____

TEXAS FARMERS INSURANCE COMPANY

_____

MID-CENTURY INSURANCE COMPANY OF
TEXAS

_____

MID-CENTURY INSURANCE COMPANY

_____
*[signature: Paul N. Hopkins]*

FARMERS TEXAS COUNTY MUTUAL
INSURANCE COMPANY

_____

TRUCK INSURANCE EXCHANGE

_____
*[signature: Paul N. Hopkins]*

TRUCK UNDERWRITERS ASSOCIATION

_____
*[signature: Paul N. Hopkins]*

TEXAS FARMERS INSURANCE COMPANY

_Jim Suikens_

MID-CENTURY INSURANCE COMPANY OF
TEXAS

_Jim Suikens_

MID-CENTURY INSURANCE COMPANY

FARMERS TEXAS COUNTY MUTUAL
INSURANCE COMPANY

_Jim Suikens_

TRUCK INSURANCE EXCHANGE


TRUCK UNDERWRITERS ASSOCIATION

# EXHIBIT 3

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. D-1-GV-02-002501

STATE OF TEXAS, THE TEXAS      ) IN THE DISTRICT COURT
DEPARTMENT OF INSURANCE,        )
AND THE TEXAS                   )
COMMISSIONER OF                 )
INSURANCE,                      )
            Plaintiffs,         )
                                )
VS.                             )
                                )
                                )
FARMERS GROUP, INC.,            )
FARMERS UNDERWRITERS            ) TRAVIS COUNTY, TEXAS
ASSOCIATION, FIRE               )
UNDERWRITERS ASSOCIATION,       )
FARMERS INSURANCE               )
EXCHANGE, FIRE INSURANCE        )
EXCHANGE, TEXAS FARMERS         )
INSURANCE COMPANY,              )
MID-CENTURY INSURANCE           )
COMPANY OF TEXAS, AND           )
FARMERS TEXAS COUNTY            )
MUTUAL INSURANCE COMPANY,       )
            Defendants.         ) 261ST JUDICIAL DISTRICT

------------------------------------------------------

HEARING ON MOTIONS TO STRIKE
AND MOTION TO LIFT STAY ON DISCOVERY

------------------------------------------------------

On the 4th day of September, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Scott H. Jenkins, Judge presiding, held in Austin, Travis County, Texas;

Proceedings reported by machine shorthand.

judgment on the settlement that went up through appeals. That has not occurred at this point. This language was brought forward and, you know --

THE COURT: What am I to make of the language farther up the page, though, that he didn't cite, Farmers parties do not agree to certification of the settlement classes for any purpose other than to effectuate this settlement agreement?

Well, I haven't approved this settlement agreement. In fact, I rejected it. So you are now in a posture where you don't agree with the class action. And in fact, you were the party who wanted the class action 12 years ago. So it seems to me we're back at square one with no settlement agreement, no certified class, because no party -- I mean, you were the party who asked for it, and now you don't agree to it, according to your own signed document, and the State really wasn't the one who asked for it to begin with. So what am I to make of all that?

MR. INCERTO: Well, I have to respectfully disagree with the Court's analysis on that. I think we do have a class action. I believe it's law in the case from the Supreme Court. I believe that this particular provision --

THE COURT: Well, then is this just

gratuitous? You put it in this -- this is the one you signed, and you put it as part of your motion filed in August of 2013 that you wanted me to read and consider to approve the settlement and to approve -- well, to approve the settlement, get preliminary approval. Now that I have declined to do that, I mean, this is the language that you kept in there. And you obviously gave it a lot of attention because I looked at the changes you made.

MR. INCERTO: Your Honor, we tried to change as little as possible and carried forward everything from the prior agreement except what absolutely needed to be changed because of I said the problem with the credit notice -- credit reports not being --

THE COURT: Well, does that mean if I decline to approve a settlement, this settlement, and you're now going to litigate it -- because I went back and read what now Justice Boyd said at the time when he was a witness, we'll have to decide how to structure this trial in this case. In other words, you are agreeing to a class action trial or not?

MR. INCERTO: No, Your Honor. We agreed for purposes of this settlement agreement --

THE COURT: Exactly.

# REPORTER'S CERTIFICATE

THE STATE OF TEXAS   )

COUNTY OF TRAVIS     )

               I, Chavela V. Crain, Official Court Reporter in and for the 53rd District Court of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

    I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered in evidence by the respective parties.

    WITNESS MY OFFICIAL HAND this the 10th day of September, 2014.

*/s/ Chavela V. Crain*
Chavela V. Crain
Texas CSR 3064, RMR, CRR
Expiration Date:  12/31/2015
Official Court Reporter
53rd District Court
Travis County, Texas
P.O. Box 1748
Austin, Texas 78767
(512) 854-9322

*

# EXHIBIT 4

| | | |
|---|---|---|
| THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, and THE TEXAS COMMISSIONER OF INSURANCE, | § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § § | |
| v. | § § | |
| FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIATION, FIRE UNDERWRITERS ASSOCIATION, FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, TEXAS FARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY OF TEXAS, MID-CENTURY INSURANCE COMPANY, FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, and TRUCK UNDERWRITERS ASSOCIATION, | § § § § § § § § § § § § § § | OF TRAVIS COUNTY, TEXAS    261ST JUDICIAL DISTRICT |
| Defendants. | | |

## ORDER OF PRELIMINARY APPROVAL

This matter came on for hearing on October 18, 2013, at 9:00 a.m. for preliminary approval of the Second Amended Settlement Agreement and Stipulation of December 18, 2002, as amended on June 13, 2003, and as further amended on August ___, 2013 ("Second Amended Settlement Agreement") between the State of Texas, the Texas Department of Insurance, and the Texas Commissioner of Insurance, on behalf of Texas policyholders of the Defendants in the classes defined below (collectively, the "State") and Fire Underwriters Association, Farmers Group, Inc. d/b/a Farmers Underwriters Association, Farmers Insurance Exchange, Fire

Insurance Exchange, Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Farmers Texas County Mutual Insurance Company, Truck Insurance Exchange, and Truck Underwriters Association (collectively, the "Farmers Parties"). The State and the Farmers Parties have moved jointly, pursuant to Texas Rule of Civil Procedure Rule 42(e) and Texas Insurance Code § 541.266, for an Order of Preliminary Approval (the "Order") (1) preliminarily approving the settlement of all claims asserted in the above-captioned cause (the "Action"), the terms of which are set forth in the Second Amended Settlement Agreement which has been filed with the Clerk of the Court, and (2) approving the proposed notice to the Classes.

The Court having read and considered the Second Amended Settlement Agreement and attached exhibits, including the proposed Notice of Proposed Class Settlement, the proposed Claim Form, the proposed form of Final Judgment, exhibits, pleadings and record in this case, the evidence and other materials presented at the hearing, and argument of counsel and applicable authorities, finds that there exists substantial and sufficient grounds for entering this Order.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1. The Court, for purposes of this Order, adopts all defined terms as set forth in the Settlement Agreement.

2. Pursuant to Rule 42 and Texas Insurance Code §§ 541.251-.267, this Court hereby certifies, only for purposes of effectuating the Settlement Agreement, the following Settlement Classes (the "Settlement Classes"):

    (i)    All of the Exchanges' Texas homeowners insurance policyholders (a) whose homeowners insurance policy incepted (including renewals) from December 28, 2001, through and including December 27, 2002, or

(b) who received a notice at any time after November 14, 2001, that their HO-B policy would not be renewed (the "Rate Class");

(ii)     All of the Exchanges' Texas homeowners insurance policyholders who according to Farmers' records were eligible to receive discounts for FPRA, age of home, or territory from November 16, 2000, through and including December 10, 2002 (the "Discount Class"); and

(iii)    All Texas homeowners or automobile insurance policyholders of the Exchanges or the Automobile Insurance Providers who according to Farmers' records had a homeowners or automobile insurance policy in effect with Farmers from October 1, 1999, through February 28, 2003 (the "Credit Usage Notice Class").

3.     The Court hereby acknowledges and confirms the State, through the Office of the Attorney General, to fulfill the role of the Settlement Classes' Counsel. The Court finds that the Attorney General's office is authorized to bring this class action by the *parens patriae* authority granted in sections 541.251 and 541.256-57 of the Insurance Code and Rule 42 of the Texas Rules of Civil Procedure. *See Farmers Group, Inc. v. Lubin*, 222 S.W.3d 417 (Tex. 2007).

4.     This Court additionally finds and concludes that each of the requirements of Rule 42(a) & (b) and §§ 541.256 and 541.257 of the Texas Insurance Code has been met, specifically: (a) each of the Settlement Classes is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Classes which predominate over any individual questions; (c) the claims or defenses brought by the State on behalf of Farmers' policyholders are typical of the claims or defenses of the Settlement Classes and the State is authorized to bring claims on behalf of the Settlement Classes; (d) in negotiating and entering into the Settlement Agreement, the State has fairly and adequately represented and protected the interests of the Settlement Classes; (e) the questions of law or fact common to the Settlement Classes predominate over any questions affecting only individual members; and (f) certifying this Action as a class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of the controversy.

5. The Court further finds that there has been no collusion between the State and the Farmers Parties with respect to negotiating the Settlement Agreement and that the State has represented, and will continue to represent, the interests of the Farmers' policyholders fairly and adequately and without a conflict of interests. Accordingly, the Court preliminarily approves: (a) the Second Amended Settlement Agreement, including the terms and the releases set forth therein, as being fair, just, reasonable, and adequate as to each of the parties thereto, and (b) the Settlement Funds described therein, including the Prospective Rate Reduction, Retrospective Rate Reduction, Individualized Discount Adjustment, and Credit Usage Notice Adjustment Fund, and the proposed additional consideration, subject to the right of any member of the Settlement Classes to exclude himself or herself from the Settlement Classes in accordance with the terms set forth in the Settlement Agreement, and to show cause, if any exists, why a Final Judgment should not be entered in accordance with the terms of the Settlement Agreement.

6. A hearing (the "Settlement Hearing") shall be held before this Court on January 22, 2014, at 9:00 a.m. in the 53rd Judicial District Court Room: (a) to determine whether the proposed Second Amended Settlement Agreement is fair, reasonable, and adequate and should be approved, and whether the Final Judgment should be entered as to claims asserted therein, or which could have been asserted, against the Released Parties on the merits; (b) to determine whether the Settlement Classes members' right to adequate representation has been satisfied; and (c) to reserve jurisdiction to effect and enforce the Settlement Agreement.

7. The Farmers Parties shall disseminate notice of the proposed Second Amended Settlement Agreement and Settlement Hearing to putative members of the Settlement Classes within thirty (30) days of the date of this Order. A copy of the Notice of Proposed Class Settlement (the "Notice"), together with a copy of the Claim Form, substantially in the form

attached hereto as Exhibit 1, shall be mailed by first-class U.S. mail, postage prepaid, to all members of the Settlement Classes at the address of each such person as set forth in the records of the Released Parties or as otherwise may be identified through reasonable effort. In addition, commencing within seven (7) days of the date of this Order and continuing until the date of the Settlement Hearing, the Office of the Attorney General, the Texas Department of Insurance, and the Farmers Parties shall post on their respective Internet web-sites (www.oag.state.tx.us, www.tdi.state.tx.us and www.farmers.com), as well as at www.TexasFarmersSettlement.com, the Notice and a Summary Notice of Settlement, substantially in the form attached hereto as Exhibit B ("Summary Notice").

8. The Court approves the form of Notice, the Summary Notice, and the Claim Form, and finds that the procedures established for mailing and distributing such notices substantially in the manner and form set forth in paragraph 7 of this Order meet the requirements of Rule 42 of the Texas Rules of Civil Procedure and §§ 541.261 and 541.267(b) of the Texas Insurance Code and due process, and constitute the best notice practicable under the circumstances.

9. To effectuate the provision of notice provided in paragraph 7 hereof, the Farmers Parties shall be responsible for the receipt of all responses from the members of the Settlement Classes and, until further order of this Court, shall preserve all entries of appearance, Claim Forms, requests for exclusion, and any and all other written communications from members of the Settlement Classes or any other person in response to the Notice. The costs of notification of the Settlement Classes as provided herein, including printing, mailing, and posting on the Internet of all required notices, shall be borne by the party charged with the responsibility for such actions in paragraph 7 of this Order.

10.     Three (3) days before the date fixed by this Court for the Settlement Hearing, the State and the Farmers Parties shall cause to be filed with the Clerk of the Court affidavits or declarations of the person or persons under whose general direction the mailing of the Notice and the distribution of the Summary Notice by posting on the web-sites identified in paragraph 7 shall have been made, showing that such mailing and publication have been made in accordance with this Order.

11.     Each member of the Settlement Classes will be bound by the proposed settlement provided for in the Settlement Agreement, and by the Final Judgment or any other determination by this Court affecting the Settlement Classes, unless such member shall mail, by first-class U.S. mail, a written request for exclusion from the Settlement Classes, post-marked no later than December 23, 2013, addressed to State v. Farmers Settlement Administrator, Rust Consulting, Inc.; P.O. Box 9348; Minneapolis, MN 55440-9348. Such request for exclusion must state (a) the name, address and telephone number of the person seeking exclusion; (b) whether such person has a homeowners or automobile insurance policy from the Farmers Parties, or both; (c) the date of inception of such policy(ies) and the most recent date of renewal for such policy(ies), if available; (d) the policy number(s), if available; and (e) that the person making the request wishes to be excluded from the Settlement Classes. Because the Settlement Agreement is intended to be a resolution of all Released Claims, any person requesting exclusion must either exclude himself or herself from the Settlement Agreement in its entirety, or submit to the Settlement Agreement in its entirety. A request for exclusion shall not be effective unless it is made in the manner and within the time set forth in this paragraph and in the Notice. If a member of the Settlement Classes requests to be excluded, that person will not receive any benefit from the Retrospective Rate Reduction, the Individualized Discount Adjustment, or the

Credit Usage Notice Adjustment Fund provided for in the Settlement Agreement, in the event the Settlement Agreement is approved by the Court, nor will such person be permitted to participate further in the Action. Any Class Member who does not request exclusion in the manner provided for herein may, but need not, enter an appearance in this Action at his or her own cost through counsel of his or her own choice. If a member of the Settlement Classes does not enter an appearance, that person's interests will be represented by the State in the Action.

12. Any member of the Settlement Classes who has not requested exclusion from the Settlement Classes may appear at the Settlement Hearing, in person or through counsel, to object and be heard in opposition to any of the matters to be heard at the Settlement Hearing, including (a) the requested approval of the Settlement Agreement as fair, adequate, and reasonable, and/or (b) the requested entry of the Final Judgment. A member of the Settlement Classes cannot request exclusion from the Settlement Classes AND object to the Settlement Agreement. For any objection to be considered by the Court, the objector must mail a valid written objection, and it must be postmarked by no later than December 23, 2013. In order to be valid, the written objection must set forth (a) a reference, at the top, to "State of Texas v. Farmers, Cause No. GV202501," (b) a statement as to whether the objector intends to appear at the Settlement Hearing, either in person or through counsel, (c) a detailed statement of the specific basis for the objection, (d) the name that is set forth on the Notice that was sent to the objector, (e) the objector's current name, if different from the name set forth on the Notice, (f) the objector's current address, (g) the objector's current telephone number and, if available, telecopier number, (h) the objector's type of policy and policy number, and (i) the objector's signature or that of his or her authorized representative. Three copies of the written objection must be sent, the first addressed to the District Clerk of Travis County, Texas, 1000 Guadalupe Street, Austin, Texas

78701, the second addressed to David C. Mattax, Director of Defense Litigation, Office of the Attorney General, P.O. Box 12548, Austin, Texas 78711-2548, and the third addressed to Marcy Hogan Greer, Fulbright & Jaworski L.L.P., 98 San Jacinto Boulevard, Suite 1100, Austin, Texas 78701. If an objection does not include all of the required information or if it is not timely mailed to the three correct addresses, then it shall be invalid and it will not be considered by the Court. Any member of the Settlement Classes who does not object in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the Settlement Agreement and the proposed Final Judgment.

13. If the Court gives final approval to the Settlement Agreement and enters a final judgment, in order to be entitled to participate in the Credit Usage Notice Adjustment Fund portion of the Settlement Agreement, a member of the Credit Usage Notice Class who has not requested exclusion from the Settlement Classes must submit a Claim Form, substantially in the form attached as Exhibit C hereto, to the Claims Administrator at the address set forth in the Notice. Such Claim Form must be completed and postmarked on or before March 24, 2014. Any member of the Credit Usage Notice Class who does not submit a completed Claim Form shall not be entitled to share in the Credit Usage Notice Adjustment Fund but nonetheless shall be bound by the terms of the Second Amended Settlement Agreement and by the Final Judgment and any other Order of this Court approving the Second Amended Settlement Agreement, including all releases therein, and shall be barred and enjoined in this or any other action from asserting any Released Claims.

14. Members of the Rate and Discount Classes shall automatically receive their share of Settlement Funds upon final approval of the Second Amended Settlement Agreement and

entry of final judgment, unless they file a written request for exclusion from the Settlement Classes as provided in paragraph 11 herein.

15. The Court expressly retains the power to adjourn the Settlement Hearing, without any further notice other than an announcement at the Settlement Hearing of adjournment thereof, and to approve, modify, or disapprove the Second Amended Settlement Agreement without further notice to members of the Settlement Classes. The Court retains jurisdiction over this Action to consider all further applications arising out of or connected with the proposed settlement herein.

16. The administration of the Second Amended Settlement Agreement, and the decision of all disputed questions of law and fact with respect to the validity of any claim or right of any person to participate in the distribution of the Settlement Fund, shall be under the authority of the Court. The parties to this Second Amended Settlement Agreement, counsel herein in any capacity in which they may act hereunder, and any employees or agents of such law firms or the parties to the Second Amended Settlement Agreement (including, without limitation, those employees who may furnish services in connection with the proposed Settlement) shall not be liable for anything done or omitted in connection with the Second Amended Settlement Agreement and the administration thereof except for their own willful misconduct.

17. The parties to the Settlement Agreement are directed to carry out their obligations under the Second Amended Settlement Agreement.

18. In the event that the Second Amended Settlement Agreement is not approved by the Court, or the Court enters the Final Judgment and it is vacated or modified on appeal, or otherwise altered in a material way, or the Effective Date for any other reason does not occur,

and if any party to the Second Amended Settlement Agreement thereafter exercises its right to terminate the Settlement Agreement as provided therein, then the Second Amended Settlement Agreement and any actions to be taken in connection therewith shall be vacated and terminated and shall become null and void for all purposes, and all negotiations, transactions and proceedings connected with it (a) shall be without prejudice to the rights of any party hereto; (b) shall not be deemed or construed as evidence or an admission by any party of any fact, matter or thing; and (c) shall not be admissible in evidence or used for any purpose in any subsequent proceeding in the Action, or any other action or proceeding in this or any other forum, judicial, administrative, or otherwise, except proceedings to enforce the Settlement.

SIGNED_____, 2013.


_____
PRESIDING JUDGE

# EXHIBIT 5

REPORTER'S RECORD
VOLUME 2 OF 2 VOLUMES
TRIAL COURT CAUSE NO. D-1-GV-02-002501

| STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, AND THE TEXAS COMMISSIONER OF INSURANCE, Plaintiffs, | ) ) ) ) ) ) | IN THE DISTRICT COURT |
|---|---|---|
| VS. | ) ) ) | |
| FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIATION, FIRE UNDERWRITERS ASSOCIATION, FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, TEXAS FARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY OF TEXAS, AND FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | TRAVIS COUNTY, TEXAS 261ST JUDICIAL DISTRICT |

-----------------------------------------------------

HEARING ON JOINT MOTION FOR
PRELIMINARY APPROVAL OF SECOND AMENDED
SETTLEMENT AGREEMENT

-----------------------------------------------------

On the 2nd day of July, 2015, the following

proceedings came on to be heard in the above-entitled

and numbered cause before the Honorable Scott H.

Jenkins, Judge presiding, held in Austin, Travis County,

Texas;

Proceedings reported by machine shorthand.

THE COURT: Well, I asked questions because of the very -- for the very same reason I'm asking now, does anybody know that answer, and I think --

MR. LONGLEY: I don't know of any empirical evidence that's in this record.

**COURT'S RULING**

THE COURT: Okay. Thank you. That answers my question. You both answered my question the same way. Thank you. And that's my only question.

All right. You need to submit to my staff proposed orders. I know your proposed order will be to grant the joint motion for preliminary approval.

And I know your motion -- or your order will be to deny the joint motion for preliminary approval. It might even have more in it such as to sign an order that decertifies the class. I don't know.

But do you, as you sit here now, have in your possession the very proposed order that you wish for this Court to sign after I go back and think about whether I'm prepared to sign your proposed order? Do you have your order?

MS. GREER: We do, Your Honor.

THE COURT: Would you hand that to my court operations officer? And I assume you've already

tendered that to the opposing parties.

MS. GREER:  No, we weren't presuming at this point.

THE COURT:  That's okay.  Please do that now.

MS. GREER:  And I have provided it to the State.

THE COURT:  Thank you.  Do the intervenors have a proposed order to conclude this hearing?

MR. LONGLEY:  No, Your Honor.  We were relying upon the form of the order that was attached to their moving motion, which is obviously far different from this order.

THE COURT:  Okay.  That's great.  Well, let's just take a moment to look at it and see what it is they're asking the Court to do at the conclusion of this hearing.

This question is directed to the moving parties.  Exhibits 1, 2 and 3 to this order are identical to the forms that were already submitted in your joint motion materials, correct?

MS. GREER:  Yes, Your Honor.

THE COURT:  Thank you.  I'm not going to go reread --

MS. GREER:  Although I did note, being

completely detail oriented here, one typographical error in the notice that we might as well address now.

THE COURT:  On which exhibit is this?

MS. GREER:  That would be Exhibit 1, Your Honor.

THE COURT:  Yes, the notice.

MS. GREER:  There's a reference --

THE COURT:  What page are you on?

MS. GREER:  I am on Page 5 under Question No. 9.  At the end of that first paragraph, it says see Question 14, and that actually should be Question 13. Since we're here I thought we could correct it.

THE COURT:  Oh, I see.  At the end of the first paragraph?

MS. GREER:  Yes, Your Honor.

THE COURT:  Question 14 is a mistake.  It should be Question 13.

MS. GREER:  Yes, sir.

THE COURT:  Okay.  Otherwise, these are identical to what you submitted before?

MS. GREER:  Correct.

THE COURT:  And in fact, it is identical, but it contains a mistake, and so it now needs to be corrected.

MS. GREER:  Correct.

THE COURT: I get it.

MS. GREER: And, Your Honor, the State has pointed out a couple of small nits in the order itself just with website names on Page 4.

THE COURT: At the bottom?

MS. GREER: Yes, Your Honor. The Texas Attorney General has changed its website to www.texasattorneygeneral.gov.

THE COURT: All spelled out?

MS. GREER: All spelled out. And the next --

THE COURT: And then it's still dot state dot TX, et cetera?

MR. GODBEY: No, Your Honor.

THE COURT: Okay. So it's just www.texasattorneygeneral --

MS. GREER: Dot gov.

THE COURT: -- dot gov. Yes, we changed ours here in the County also, which causes no end to problems, although most of it's seamless, but not entirely.

MS. GREER: And Your Honor, there's a typo in the next website, and I apologize because it's mine. It should be TDI.state.tx.

THE COURT: I'm sorry. It should be --

MS. GREER: TDI, Texas Department of Insurance.

THE COURT: Of course, instead of just TI.

MS. GREER: Correct.

THE COURT: Got that.

MR. MINDELL: Your Honor, actually the TDI website is now www.TDI.Texas.gov.

MS. GREER: We got the Norton Rose one right.

THE COURT: Well, that's nice. That's good. All right. Anybody else find any other typos?

I mainly wanted to make sure -- because I did not take the time to reread Exhibits 1, 2 and 3, because I've already read those things. I only wanted to read with some care the proposed order that you want me to sign, and I've done that.

And so I'm prepared to tell you -- because I've spent a lot of time on this, we all have, for many, many years. I've read everything you've asked me to read, every case you've asked me to read, and thought about everything you wanted me to think about, and I really do appreciate what you said, but I'm now about to rule in a way that the intervenors are asking me not to. I'm about to grant this joint motion for preliminary approval.

And there are some blanks that will have to be filled in which will involve all of us. Certainly it will involve the moving parties and the Court. And so -- and you're going to get out the notice within 60 days of the signature on this order. And I'll be signing it with corrections no later than Monday, maybe sooner if I finish this work today, but I've got other work to do, and so we'll just see. But I'd like to get this done. So we need to figure out what date this will be set. I need to ask them that question first. Thank you, Mr. Longley.

MR. INCERTO: We have proposed dates if the Court wants to --

THE COURT: Would you hand that to the court operations officer with a copy to the -- do you have copies for the other side?

MR. INCERTO: It's a little confusing. The yellow highlighted are --

THE COURT: Well, I always like to walk back -- begin with the end in mind.

MR. INCERTO: Right.

THE COURT: Walk back to the end, just like we do on a trial scheduling order, and figure out what needs to be done in advance of that and how far in advance it needs to be accomplished.

MR. INCERTO: I think the end --

THE COURT: Do we need to discuss all these time periods on the record or may I give the court reporter a break now?

MR. LONGLEY: I want to make an objection on the record before we go off the record, Your Honor, regarding the form of the order that you're about to sign. We object to the form.

THE COURT: Then tell me what the defect is in the form of the order.

MR. LONGLEY: The defect is that, number one, we were just handed this order. It was not attached as part of the moving papers. The one that was attached to the moving papers in Paragraph 2 says this Court hereby certifies classes, and this is the first time we've seen an order that does not certify classes.

THE COURT: That's because their position, as you know, all along in this joint motion has been that the class was previously certified -- or the Court gave preliminary approval before, it's come back to the Court and that the class has never been decertified. That's -- has that been your argument?

MS. GREER: Yes, Your Honor.

MR. GODBEY: Yes, Your Honor.

THE COURT: And so what you like about

that other order is that it suggests that I have to go back and recertify the class, and that's what you'd like me to put in the order, right?

MR. LONGLEY: Either that or that you refuse to certify a class in this particular order for the reason that you're adopting their view that it's already been certified and you're applying that certification in 2003 to this new 2015 settlement.

THE COURT: No, I understand what they're doing in this order, and I thought about that very thing as I read it, just as you did, and I am going to sign the order as they've presented it.

MR. LONGLEY: And --

THE COURT: But I understand why you don't like that.

MR. LONGLEY: Well, the point -- the reason we don't like it is it's an attempt through collusion to deny these -- let me finish, please.

THE COURT: Well, I'm not going to morph into argument. I'm only going to talk about the form of the order. And I understand why you don't want me to sign the order, but I don't want to morph into argument now, which it sounds like you want to do, and I understand that, but we're not going to do that.

Is there any other defect in the form of

the order, that is, errors, bad grammar, misstatement of the record? I don't believe that does misstate the record, and I am going to sign that.

MR. LONGLEY: I have not had time to read the new order, and I would request respectfully that we have a red lined copy of what the differences are between the order they just handed us and the order they attached to their moving papers for this hearing, because I've seen nothing except what I've just told the Court, and I want to see what's been added, what's been subtracted, because I went through this whole hearing without having a copy of this.

THE COURT: I understand.

MR. LONGLEY: And I object to it as a matter of form.

THE COURT: I understand. But I had read it so thoroughly before, things jumped out at me just as they jumped out to you because you and I have both read this so carefully. I understand it. Let me ask them if they have a red lined copy. And if they do, I will certainly ask them to give you one. And if they don't, I will give you this afternoon to read this and compare it to the previous one and send electronically to the Court by, I would say, 3:00 or 4:00 -- I mean, you're going to need to work now side by side and compare it,

what form errors there are -- I know you have substantive disagreements; I'm not going to go backwards on that -- form errors you have on the form of the order given your comparison of the previous form and this form, and I will certainly read that, if not today then tomorrow, if not tomorrow then Saturday, because I want to get this done before I start a trial on Monday.

MR. LONGLEY: Well, I respectfully request that they provide us with a red lined because they have these documents on their computers.

THE COURT: I just mentioned I'm going to ask them that. And if not, I'll let you do the green eye shade work of looking back and forth, but let's see if they have it.

MR. LONGLEY: Okay.

THE COURT: Thank you. Do you have that?

MS. GREER: No, Your Honor, we haven't created that.

THE COURT: Okay. Never have created it. They say they haven't created it. And I know you take them at their word that they've never created that. This is simply -- this is their new and improved proposed order. And I understand that you see differences. I do, too. But that's why I wanted to take enough time so that I felt comfortable knowing

what's in this that was not in the previous order. Amazingly I do. I guess I'm still able to move that quickly. And so I'll keep reading it, though, but I wanted to let you know while you're all here that having read it, though I discerned some differences too, I'm prepared to approve it. But I want to give you the next two or three hours to go through it yourself and see if you find any other errors in it and submit that electronically simultaneously copying the other side, because I would like to get this, you know, out of the court along with all the other findings of fact and conclusions of law on other trials I've got that I'm going to be working on today and this weekend. Okay.

MS. GREER: Your Honor --

THE COURT: Anything else?

MS. GREER: Your Honor, the document that has the colored lines on it that has the dates is in the form of an Excel spreadsheet, and we can manipulate those numbers if the Court --

THE COURT: Let's talk about the final fairness hearing and work back from that, okay?

MS. GREER: Okay.

THE COURT: Because you need me for that.

MS. GREER: Correct.

THE COURT: And you only get me at certain

times.  Can we now go off the record and give the court reporter a break?  I don't want to do that if you want to keep the scheduling discussions on the record. I can go back and repeat it on the record what we've agreed to, but I thought I'd give her a break if we can be conversational for a moment about scheduling the final fairness hearing.  Is that okay or do you want to keep -- do you want to stay on the record about discussing our calendars?

MR. LONGLEY:  We can go off the record for a few minutes, Your Honor.

THE COURT:  Okay.  Great.  You should enjoy that.

All right.  Let's talk about my calendar and your calendar.

(Discussion off the record)

THE COURT:  All right.  We're back on the record, Counsel.  We've had a discussion about timing and giving everyone ample time in advance of the final fairness hearing to file objections and to file any briefing about those objections so that the Court can thoroughly consider that.  And having consulted and worked collegially about this, I think everyone's in agreement that we can give more than ample time for all of that to be accomplished if we set the final fairness

hearing for February 1st. And if no one says they disagree with that, I think I just summarized correctly what everyone has worked together to ensure that the Court is going to do, and that is to have a thorough opportunity to consider any objections to final fairness in advance of that hearing and to begin that hearing on February 1st. So that date will be put in this order, and then you will back up from that date and put briefing -- you're going to add a briefing schedule to this order, correct?

MR. INCERTO: That's correct.

THE COURT: And you're going to add, are you, a subpoena deadline to this order, or do you want to think about that?

MR. INCERTO: I think we'll add the subpoena deadline and we'll add the briefing deadline as the 14th of December.

THE COURT: All right. Well, I want to review that order. And if there's some -- and I ask you to send that to Mr. Longley and his colleagues so that you can, again, collegially discuss any deadlines to make sure that everyone's had an opportunity to think about who they want to subpoena. But then, for everyone's sake, and especially the witnesses, so we don't have the last-minute subpoenas we've had in this

preliminary fairness hearing, I would like to cook some deadlines in there. Do you have any questions about what I'm going to do?

MR. LONGLEY: No, Your Honor, I don't. What I would request is that the nits that you have requested, that they be included in whatever they send over to us so that we don't -- I haven't written all these down as we've gone through here informally. So just correct whatever it is they're going to correct and send it over to us. As to form, we have no objection with the date the Court has said that you want to have the final fairness hearing. We're not agreeing to it.

THE COURT: I understand.

MR. LONGLEY: Yeah.

THE COURT: But you have no objection to --

MR. LONGLEY: We have no objection to the setting.

THE COURT: To the setting. And you have no objection to baking into this order deadlines for subpoenas, deadlines for briefing provided those are reasonable. And we've talked about roughly six or more weeks before the final fairness hearing having the final briefs submitted. Given how far in advance we're setting this final fairness hearing, you have during our

discussions offered no objections to the idea that we would bake in some deadlines so that the Court has an ample opportunity to have us all prepared for the final fairness hearing.

MR. LONGLEY: We understand thoroughly, Your Honor, the need for dates to be in there, and as to that part of the form we have no objection.

THE COURT: Thank you for saying that. And I know you're speaking on behalf of the other intervenors, too. Thank you.

Anything else we need to say on the record about this so that I can then review this order you're going to get to me hopefully later today and I can sign it sometime today or over the weekend? The next time it'll be filed if it's not filed by 5:00 p.m. today -- the clerk's office shuts down, so they won't be filing it until Monday no matter what I'm signing, but I will get it signed no later than Monday. And you're going to be getting that to me this afternoon; is that correct?

MR. INCERTO: That is correct.

THE COURT: And Mr. Longley requested just now, could you -- when you redo this, correcting the nits, could you shoot that over to his office and his co-intervenors in a form that allows them to quickly see --

MR. INCERTO: We'll red line --

THE COURT: -- the nit corrections you've done?

MR. INCERTO: We'll red line the original order to show the corrections and the nits.

THE COURT: Thank you. I know he appreciates that. Anything else we need to say on the record?

MR. INCERTO: Nothing further, Your Honor.

MR. GODBEY: Nothing, Your Honor.

MR. LONGLEY: I think we're finished, Your Honor. Do we need to report back to you tomorrow? Is that what you were asking?

THE COURT: First I need to let the court reporter know she's through. Is there anything else we need to say on the record? No?

MR. LONGLEY: Only when you want us to report back to you with regard to what they're going to send to us so that we know the deadline that we've got to get you something, objections or something about this order.

THE COURT: Well, they're not going to give you a red line comparing this order today with the previous order.

MR. LONGLEY: I understand that.

THE COURT: They're only going to give you a little red line with the nit corrections.

MR. LONGLEY: Right.

THE COURT: So your job now is to go back now, which you're already doing, and I am too -- I've already compared it in my mind because I remember what was in the previous order, and that's why you and I both knew one of the changes in this order. You now need to go back and compare this to the previous order, and you also need to let me know by the end of the day what corrections, even before you get the nit red lines, you are finding in this order. Then if there's something about their -- so you'll need to do that this afternoon also. I suggest at 4:00 o'clock that you need -- but I would like it no later than 4:00. I'd prefer it earlier.

How long is it going to take you to go back and read the order that you already argued on the record is different from this order in some material way, especially as it references the certification of the class? You know what I'm referring to now.

MR. LONGLEY: Yes, sir, I do.

THE COURT: Anything else like that you want me to understand that you think I might not have understood -- I believe I have, but if you don't think I

have, I want to know by what time this afternoon you're going to put that in an e-mail to the Court so I can give one last thought to that. I'm not going to rethink my decision, but I am thinking about the form of the order.

MR. LONGLEY: I think I can meet that timetable so long as I get what they're going to send over to me reasonably soon.

THE COURT: Well, that's just nit corrections with dates. I need to know anything in addition to the thing that you said earlier such as, well, this changes what you're saying about the class certification. Yes, yes it does, in some respects, and I'm signing it. If there's anything else like that, I need to know by 3:00, 4:00 at the latest. I would hope by 3:00. I would hope you could go back right now and compare it and tell me anything else that you couldn't -- because I know you've read this thoroughly before.

MR. LONGLEY: I guess what I need to know is the Court is not going to entertain any alternative order to refuse with regard to what we might want to submit?

THE COURT: I'm not going to entertain any substantive differences, that's correct.

MR. LONGLEY: Such as the certification.

THE COURT: That's correct. That's exactly right.

MR. LONGLEY: We're addressing that right now.

THE COURT: Exactly, we are addressing that right now. And I understood that from the briefing you gave me in advance of this hearing that you were each trying to spin my prior comments on the record to be a "oh, we need to recertify this class" from your perspective and "no we don't" from their perspective. I understood that completely.

MR. LONGLEY: And I think I do, too, Your Honor, that this particular settlement that you're approving will not have a separate certification or refusal to certify.

THE COURT: It's going to be the order they've proposed.

MR. LONGLEY: I gotcha. And I can get back to you by 5:00 o'clock today or to e-mail Ms. Daniel.

THE COURT: No.

MR. MAXWELL: 4:00 o'clock, Joe.

THE COURT: No, by 4:00 o'clock.

MR. LONGLEY: 4:00 o'clock. Okay. Sorry.

THE COURT: Okay. Good. All right. Any other questions or statements on the record before I let the court reporter get a well-deserved break?

MR. INCERTO: Nothing further.

MR. GODBEY: Nothing further, Your Honor.

MR. LONGLEY: Nothing further.

MR. BLANKS: Nothing from the Hooks, Your Honor.

MR. WOODS: Nothing.

THE COURT: All right. Thank you all.

*(Court adjourned)*

# REPORTER'S CERTIFICATE

THE STATE OF TEXAS )

COUNTY OF TRAVIS )

I, Chavela V. Crain, Official Court Reporter in and for the 53rd District Court of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered in evidence by the respective parties.

WITNESS MY OFFICIAL HAND this the 12th day of July, 2015.

*/s/ Chavela V. Crain*
Chavela V. Crain
Texas CSR 3064, RMR, CRR
Expiration Date: 12/31/2015
Official Court Reporter
53rd District Court
Travis County, Texas
P.O. Box 1748
Austin, Texas 78767
(512) 854-9322

# EXHIBIT 6

CAUSE NO. GV202501

| | | |
|---|---|---|
| THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, and THE TEXAS COMMISSIONER OF INSURANCE, | § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § § | |
| v. | § § | |
| FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIATION, FIRE UNDERWRITERS ASSOCIATION, FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, TEXAS FARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY OF TEXAS, MID-CENTURY INSURANCE COMPANY, FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, and TRUCK UNDERWRITERS ASSOCIATION, | § § § § § § § § § § § § § § § | OF TRAVIS COUNTY, TEXAS |
| Defendants. | § § | 261ST JUDICIAL DISTRICT |

## FINAL JUDGMENT

The Court held an evidentiary hearing in this action on the day of January 22, 2014. After considering the Second Amended Settlement Agreement and Stipulation ("Settlement Agreement"), the releases contained therein and the exhibits thereto, objections received regarding the proposed settlement, pleadings and record in this case, the evidence presented at the hearing, and arguments of counsel and applicable authorities, the Court rules as follows:

1. The Court has jurisdiction over the subject matter of this Action and over the parties to the Action, including the State of Texas, the Texas Department of Insurance, and the

**Second Amended Settlement**
**Agreement and Stipulation**

**EXHIBIT K**

Texas Commissioner of Insurance (collectively, the "State"), as well as the Settlement Class Members, as plaintiffs, and Fire Underwriters Association, Farmers Group, Inc. d/b/a Farmers Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Farmers Texas County Mutual Insurance Company, Truck Insurance Exchange, and Truck Underwriters Association, as defendants (collectively, the "Farmers Parties");

2. The Settlement Agreement is reasonable, fair, just, and adequate and satisfies Texas Rule of Civil Procedure 42 and Texas Insurance Code § 541.266(a);

3. The State has satisfied the Settlement Class Members' rights to adequate representation;

4. The Court hereby acknowledges and confirms the State, through the Office of the Attorney General, to fulfill the role of the Settlement Classes' Counsel. The Court finds that the Attorney General's office is authorized to bring this class action by the *parens patriae* authority granted in sections 541.251 and 541.256-.257 of the Texas Insurance Code and Rule 42 of the Texas Rules of Civil Procedure;

5. This Court additionally finds and concludes that each of the requirements of Rule 42(a) and (b) and sections 541.256 and 541.257 of the Texas Insurance Code has been met, specifically: (a) each of the Settlement Classes is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Classes which predominate over any individual questions; (c) the claims or defenses brought by the State on behalf of Farmers' policyholders are typical of the claims or defenses of the Settlement Classes and the State is authorized to bring claims on behalf of the Settlement Classes; (d) in negotiating

and entering into the Settlement Agreement, the State has fairly and adequately represented and protected the interests of the Settlement Classes; (e) the questions of law or fact common to the Settlement Classes predominate over any questions affecting only individual members; and (f) certifying this Action as a class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of the controversy;

6. The Court further finds that there has been no collusion between the State and the Farmers Parties with respect to negotiating the Settlement Agreement and that the State has represented, and will continue to represent, the interests of the Farmers' policyholders fairly and adequately and without a conflict of interests.

7. The Notice provided pursuant to the Court's Order of Preliminary Approval signed the day of October 18, 2013, provided the best notice practicable to all persons within the definition of the Settlement Classes under the circumstances, and fully complies with Tex. R. Civ. P. 42(c)(2), sections 541.261 and 541.267(b) of the Texas Insurance Code, and the Texas and United States Constitutions;

8. At the time Farmers Insurance Exchange and Fire Insurance Exchange ("Exchanges") ceased offering HO-B form policies in Texas, they were not subject to the withdrawal requirements found in former art. 21.49-2C of the Texas Insurance Code pursuant to former Texas Insurance Code Article 19.12;

9. The Farmers Parties have no statutory or regulatory duty nor any contractual obligation under forms approved by the Texas Department of Insurance, either to renew or offer HO-B policies to policyholders in the State of Texas; and

10. The decision to discontinue the Exchanges' HO-B policy offerings, and offer, as an alternative to the HO-B policy, an amended HO-A policy, was accepted by the Commissioner of Insurance.

The Court ORDERS as follows:

1. The Settlement Agreement, including the definitions contained therein and the exhibits thereto, is approved and shall be consummated in accordance with the terms and provisions thereof, and the Court orders the Parties to comply with the Settlement Agreement. The terms "Released Parties," "Released Claims," "Settlement Classes," "Settlement Class Members," and all other terms in this Final Judgment are defined in accord with the terms in the Settlement Agreement.

2. This Final Judgment is binding on all parties to the Settlement Agreement and on all Settlement Class Members. Settlement Class Members, as defined in the Settlement Agreement, include all of the following who did not timely request exclusion from the Settlement Classes:

> (a) All of the Exchanges' Texas homeowners insurance policyholders (a) whose homeowners insurance policy incepted (including renewals) from December 28, 2001, through and including December 27, 2002, or (b) who received a notice at any time after November 14, 2001, that their HO-B policy would not be renewed (the "Rate Class");

> (b) All of the Exchanges' Texas homeowners insurance policyholders who according to Farmers' records were eligible to receive discounts for FPRA, age of home, or territory from November 16, 2000, through and including December 10, 2002 (the "Discount Class"); and

> (c) All Texas homeowners or automobile insurance policyholders of the Exchanges or the Automobile Insurance Providers who according to Farmers' records had a homeowners or automobile insurance policy in effect with Farmers from October 1, 1999, through February 28, 2003 (the "Credit Usage Class").

3.     In accordance with and pursuant to the terms of the Settlement Agreement, the Released Parties shall make available to eligible Settlement Class Members the Prospective Rate Reduction, the Retrospective Rate Reduction, the Individualized Discount Adjustment, and the Credit Usage Notice Fund.

4.     Entry of this Final Judgment approves the Settlement Agreement and settles all Released Claims.     As of the Effective Date of the Settlement Agreement, the State and Settlement Class Members shall be forever barred from bringing or prosecuting any action or proceeding that involves or asserts any of the Released Claims, as defined in the Settlement Agreement against the Released Parties, and shall be deemed to have released and forever discharged the Released Parties from all Released Claims.

5.     As of the Effective Date of the Settlement Agreement, the State and Settlement Class Members shall be conclusively deemed to have acknowledged the release of all Released Claims, including but not limited to claims, rights, demands, causes of action, liabilities or suits that are not known or suspected to exist as of November 30, 2002.

6.     The Settlement Funds, Revised Credit Usage Notices, and payment of attorney's fees and costs provided in the Settlement Agreement are the only consideration, fees, and expenses the Farmers Parties shall be obligated to give the State and Settlement Class Members in connection with the Settlement Agreement.

7.     All Released Claims, as defined in the approved Settlement Agreement, are dismissed in their entirety, with prejudice.

The Court DECLARES as follows:

1.     The Released Parties were under no obligation—whether statutory, regulatory or under forms approved by the Texas Department of Insurance—to renew or offer HO-B policies to policyholders in the State of Texas;

2.     The HO-B policy nonrenewal endorsements contained in the HO-B insurance policies issued by the Released Parties impose no renewal obligation on Released Parties; and

3.     The Texas Department of Insurance's nonrenewal endorsement, HO-350, does not limit the Released Parties' ability to cease offering HO-B policies to policyholders in the State of Texas.

The Court further ORDERS as follows:

1.     The Court reserves and retains exclusive and continuing jurisdiction over this Action, the State, the Settlement Class Members, and the Released Parties, to the fullest extent allowed by Texas law, for the purposes of supervising the enforcement, construction, and interpretation of:

(a)     the Settlement Agreement,

(b)     the Court's Protective Order signed the 10th day of February, 2003, and

(c)     this Final Judgment.

2.     The Court's Protective Order entered on February 10, 2003, shall continue in effect by its terms;

3.     This Final Judgment and the Settlement Agreement, and all papers related thereto, are not, and shall not be construed to be, an admission by any Party of any liability or wrongdoing whatsoever; and

4.     This Final Judgment incorporates all other orders and resolves all claims in this case made by all parties. All other relief not expressly granted herein to the State or the Settlement Class Members, or to the Farmers Parties as counter-plaintiffs, is hereby DENIED.

SIGNED _____, 2014.

_____
JUDGE PRESIDING